PETER WILLIAMS *v*. BEST CLEANERS, INC., ET AL. (15171)

Callahan, Borden, Berdon, Katz and Palmer, Js.

Argued April 26—officially released July 2, 1996

*William J. McCullough*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Michael J. Belzer*, assistant attorney general, for the appellant (defendant second injury fund).

*Michael J. Finn*, with whom was *Robert G. Montstream*, for the appellee (named defendant).

*Jason M. Dodge*, with whom, on the brief, were *James L. Pomeranz* and *Margaret E. Corrigan*, for the appellees (defendant Broadbrook Cleaners et al.).

*Robert F. Carter*, with whom was *Jonathan Gould*, for the Workers' Compensation Section of the Connecticut Bar Association et al. as amici curiae.

BERDON, J. In *Williams* v. *Best Cleaners, Inc.*, 235 Conn. 778, 670 A.2d 294 (1996) (*Williams I*), we con-

cluded that, for purposes of determining whether liability for a workers' compensation claimant's permanent disability should be transferred to the defendant second injury fund (fund) pursuant to General Statutes § 31-349,[1] a claimant's "disability" is to be evaluated in terms of his or her loss of earning capacity. On March 5, 1996, this court granted the motions for reargument that were filed after our decision in *Williams I* was rendered.[2] Today, we conclude that we incorrectly decided *Williams I*. For purposes of § 31-349, a claimant's "disability" is to be evaluated, not in terms of loss of earning capacity, but, rather, in terms of the claimant's medical impairment. Consequently, to the extent that dicta in cases such as *Mulligan* v. *F. S. Electric*, 231 Conn. 529, 541, 651 A.2d 254 (1994) ("[c]ompensation under our [workers' compensation statute] is based upon incapacity, total or partial, and hence is based upon earning power" [internal quotation marks omitted]), and

---

[1] For the purposes of this appeal, there is no substantive difference between § 31-349 as it provides today and the provisions as they existed in 1983 when this cause of action arose. Therefore, we refer to the present language of § 31-349.

General Statutes § 31-349 provides in pertinent part: "The fact that an employee has suffered a previous disability, shall not preclude him from compensation for a second injury, nor preclude compensation for death resulting from the second injury. If an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone, he shall receive compensation for (1) the entire amount of disability, including total disability, less any compensation payable or paid with respect to the previous disability, and (2) necessary medical care, as provided in this chapter, notwithstanding the fact that part of the disability was due to a previous disability. For purposes of this subsection, 'compensation payable or paid with respect to the previous disability' includes compensation payable or paid pursuant to the provisions of this chapter, as well as any other compensation payable or paid in connection with the previous disability, regardless of the source of such compensation."

[2] Two separate motions for reargument were filed, one by the named defendant, Best Cleaners, Inc., and another by the defendants Broadbrook Cleaners, Hartford Insurance Group, Windsor Dry Cleaners and Aetna Casualty and Surety Company.

*Levanti* v. *Dow Chemical Co.*, 218 Conn. 9, 14–15, 587 A.2d 1023 (1991) (legislature "presumed that the losses [in the schedule of compensation] affected earning capacity"), suggest otherwise, we disavow that language. Although this case has traveled a long and tortuous path through the appellate process,[3] we now take this opportunity to restate our opinion ab initio.

The claimant, Peter Williams, who is not a party to this appeal, originally brought a claim for workers' compensation benefits against several of his former employers, their insurers and the fund. The defendant employers are Best Cleaners, Inc., Windsor Dry Cleaners, Broadbrook Cleaners and Nu-Life Cleaners[4] (collectively referred to as the employers).[5] The workers' compensation commissioner[6] (commissioner) awarded compensation to the claimant for his permanent disabil-

---

[3] The fund appealed from the judgment of the compensation review board to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We initially heard oral argument on March 17, 1995. On July 24, 1995, we ordered rebriefing on two issues: (1) "In the context of General Statutes § 31-349, does 'disability' refer to the claimant's inability to work and loss of earning capacity, or to his degree of medical impairment?"; and (2) "Under the circumstances of this case, was the claimant's permanent disability 'materially and substantially greater than the disability that would have resulted from the second injury alone,' within the meaning of General Statutes § 31-349?" Our decision in *Williams I* was rendered on January 28, 1996. Subsequently, on March 5, 1996, the motions for reargument were granted and the Workers' Compensation Section of the Connecticut Bar Association and the Connecticut Trial Lawyers Association were granted permission to file an amicus brief. All parties, including the amici, argued orally before this court on April 26, 1996.

[4] The defendant Nu-Life Cleaners did not file a brief in this appeal. The dispute before this court is solely between the fund, the other employers and their workers' compensation insurers.

[5] The employers' insurers are Peerless Insurance Company, Home Insurance Company, Aetna Casualty and Surety Company, Hartford Insurance Group and American Motorists Insurance Company. Although the insurers are parties to this appeal, we refer only to their insureds.

[6] Darius J. Spain, acting in his capacity both as commissioner-at-large for the first district and as commissioner for the fifth district, awarded benefits to the claimant and ordered the transfer of liability to the fund. References to the commissioner are to Spain.

ity and ordered that liability for the claim be transferred to the fund in accordance with § 31-349. The workers' compensation review board (board) affirmed the decision of the commissioner. We now affirm the decision of the board.

The underlying facts are undisputed. From 1963 to 1983, the claimant worked in various dry cleaning businesses. At each place of employment, the claimant's responsibilities included removing items of wet clothing from a cleaning tank and placing them in a dryer. In discharging this task, the claimant was exposed to perchloroethylene, a volatile chemical commonly used in the industry as a cleaning agent, in both its liquid and vapor form.

In the late 1970s, the claimant began to experience difficulty breathing, and, in 1977, he was diagnosed as suffering from asthma. In 1982, when the claimant's asthma symptoms became persistent, he was referred to Thomas J. Godar, a pulmonary specialist. The claimant furnished Godar with the following history. He was fifty-nine years old, and had smoked cigarettes from age ten until he was forty-eight. He had worked in the dry cleaning business, where he was exposed on a regular basis to perchloroethylene and other cleaning solutions. Due to this history, Godar performed various pulmonary function tests on the claimant, which revealed that the claimant was suffering from obstructive airway disease with an asthmatic component. The claimant left his last employer in May, 1983, and subsequently sought workers' compensation benefits.

During the hearing before the commissioner, Godar testified extensively about the claimant's medical condition. No other expert medical testimony was presented. Godar explained that the claimant had a 50 percent impairment of his respiratory capacity, which represented the median percentage of impairment even when

the claimant was under a full regimen of medication. Godar estimated that "something in the range of a 10 to 20 percent loss in function . . . was probably related to his smoking . . . ." More precisely, he explained that 10 to 20 percent of the claimant's 50 percent loss of respiratory capacity, or 5 to 10 percent of his original capacity, was due to smoking. The remainder—80 to 90 percent of the percentage loss, or 40 to 45 percent of the claimant's original capacity—was due to the claimant's exposure to perchloroethylene throughout his career in the dry cleaning industry.

Godar also testified on the issue of whether the claimant could function in a work environment. In Godar's opinion, the claimant's exposure to perchloroethylene had sensitized his lungs and respiratory system to such an extent that even common irritants, such as cold air and perfume, could induce serious breathing problems. Godar suggested that the claimant "could do probably sedentary work under conditions where there was no smoking, no significant volatile chemicals or fumes involved in the process, and with reasonable environmental control, which would include air conditioning for the summer months . . . ." Godar opined, however, that "[i]n the real world I'm not of the opinion that he is employable. I think if you look at his lung function under ideal circumstances you would say, well, he could do something, yes, he could. The question is, who would hire him, and how long would he hold that job? And under those circumstances it's been my experience that [he is] not employable."

The commissioner concluded that the claimant was totally disabled and that his labor had become unmarketable. Implicit in the commissioner's finding was that the claimant's disability was due to his exposure to perchloroethylene while working in various dry cleaning businesses. The commissioner further found that the claimant had smoked for more than thirty-five years,

which had caused "pre-existing lung disease" that "caused his airway disease to be materially and substantially worse than it otherwise would have been." In other words, the commissioner found that the claimant's first injury to his lungs, caused by the smoking, and his second injury to his lungs, caused by exposure to perchloroethylene, resulted in a permanent disability, which was materially and substantially greater than that which would have resulted from the second injury alone. The commissioner subsequently ordered liability for the compensation claim to be transferred from the employers to the fund after the employers had paid the requisite 104 weeks of benefits. The fund appealed from the decision of the commissioner to the board, which affirmed the commissioner's decision with respect to the transfer.[7]

On appeal to this court, the fund renews its claim that the commissioner should not have ordered the transfer of liability for the claimant's compensation ben-

---

[7] The fund raised nine issues in its appeal from the commissioner to the board, which were consolidated into four issues by the board: (1) liability for the claimant's compensation benefits should not have been transferred to the fund because there was no evidence to support the commissioner's finding that there was permanent physical impairment resulting from the claimant's many years of smoking; (2) liability should not have been transferred because the commissioner found no subordinate facts that supported his conclusion that the claimant's airway disease had been made materially and substantially worse by the preexisting lung disease; (3) the commissioner had miscalculated the amount of the award due the claimant; and (4) because there were two lungs involved, the commissioner should have ordered the employer to pay 104 weeks of liability for each, or 208 weeks total, before transferring liability to the fund. In consolidating the issues, the board eliminated the fund's sixth ground, which has become the substantive issue in this appeal. The fund's sixth ground is that "[t]he commissioner erred by failing to find that the claimant's permanent disability was not made materially and substantially worse due to pre-existing lung disease." The board affirmed the decision of the commissioner on the first, second and fourth issues, but remanded the case to the commissioner for further consideration as to the amount of the award due the claimant. That issue was subsequently resolved by the commissioner.

efits pursuant to § 31-349, because the claimant's first injury did not materially and substantially contribute to his permanent disability. Section 31-349 (a) provides for a transfer of liability to the fund "[i]f an employee having a previous disability incurs a second disability from a second injury resulting in a permanent disability caused by both the previous disability and the second injury which is materially and substantially greater than the disability that would have resulted from the second injury alone . . . ."

The fund does not contest either the commissioner's explicit finding that the claimant has a "pre-existing lung disease as a result of his smoking for 35 years," or his implicit finding that this injury constitutes a permanent physical impairment within the meaning of the statute. Similarly, the fund does not challenge the commissioner's finding that, as a result of his employment, the claimant sustained a second injury to his lungs. Therefore, it is undisputed that the claimant suffers from both a previous disability and compensable second, work-related injury. Nevertheless, to ascertain whether a transfer of liability to the fund is appropriate, it must be determined whether the claimant's first and second injuries resulted in a "permanent disability caused by both [conditions] which is materially and substantially greater than [that which] would have resulted from the second injury alone . . . ." General Statutes § 31-349 (a). This question requires that we first define the term "disability."

The parties have asserted several alternative definitions of "disability." The fund takes the position that, in the context of § 31-349, "disability refers to the claimant's inability to work and loss of earning capacity and not to his degree of medical impairment." The named defendant, Best Cleaners, Inc., on the other hand, argues that "disability" refers to the claimant's degree of medical impairment. The defendants Broadbrook

Cleaners and Windsor Dry Cleaners amalgamate those two positions and argue that "disability" refers either to a claimant's inability to work or to his medical impairment, i.e., disability refers to either an inability or limitation in a claimant's ability to work, or simply to his degree of physical impairment. We conclude that, for purposes of § 31-349, "disability" refers to a claimant's degree of medical impairment.

In the context of § 31-349, the term "disability" is susceptible of two meanings—physical impairment and loss of earning capacity.[8] 1C A. Larson, Workmen's Compensation (1995) § 57.11. As Larson observes, these two "ingredients" generally occur concurrently. There are instances, however, such as the present case, in which they do not.[9]

"Permanent disability" is not defined within Connecticut's Workers' Compensation Act. General Statutes § 31-275 et seq. "Previous disability," however, is defined within § 31-275 (20) as "an employee's preexisting condition caused by the total or partial loss of, or loss of use of, one hand, one arm, one foot or one eye resulting from accidental injury, disease or congenital causes, or other *permanent physical impairment.*"[10]

---

[8] In his treatise, Professor Larson notes that the concept of disability is "a blend of two ingredients . . . . The first ingredient is disability in the medical and physical sense . . . the second ingredient is de facto inability to earn wages . . . ." 1C A. Larson, Workmen's Compensation (1995) § 57.11.

[9] As reflected by the following testimony given by Godar on cross-examination by assistant attorney general Michael J. Belzer, the claimant's smoking-related injury did not impact his employability, but, as mentioned previously, caused a 10 to 20 percent loss in his breathing capacity:

"Q. If he had not had a smoking history, would he now be out working?

"A. *I don't think the smoking had an* [e]*ffect in terms of his not being disabled now had he not been a smoker.*

"Q. So, in other words, in terms of his work function he's pretty much in the position he's in now because of his exposure to the chemicals?

"A. Correct." (Emphasis added.)

[10] Prior to the enactment of No. 91-32, § 1, of the 1991 Public Acts, "previous disability" was defined within General Statutes (Rev. to 1991) § 31-349:

(Emphasis added.) "In construing the act . . . this court makes every part operative and harmonious with every other part insofar as is possible." (Internal quotation marks omitted.) *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992). "In addition, the statute must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). Thus, the meaning of the term "disability" should not vary simply because it is modified by "permanent" rather than "previous." Accordingly, we define "disability," for the purpose of § 31-349 (a), to refer to a claimant's physical impairment. Moreover, this definition is consistent with our case law. *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 800–801, 669 A.2d 1214 (1996) (medical records admitted to demonstrate disability); *Jacques* v. *H. O. Penn Machinery Co.*, 166 Conn. 352, 359, 349 A.2d 847 (1974) (claimant's heart disease considered "preexisting permanent physical impairment" despite fact that it "had neither manifested itself so as to be a hinderance to obtaining employment nor come to the attention of the employer"); *Rowe* v. *Plastic Design, Inc.*, 37 Conn. App. 131, 135, 655 A.2d 270 (1995) (prior injury not "a first injury because it did not result in a permanent physical impairment").

We next address the issue of whether the commissioner, in transferring liability to the fund, reasonably concluded that the claimant's permanent disability was materially and substantially greater than that which would have resulted from the second injury alone. After hearing all of the evidence, the commissioner found, and the board affirmed, that the "[c]laimant's preexisting lung disease caused his airway disease to be

---

"If an employee who has previously incurred . . . [a] permanent physical impairment . . . ." The definitions are substantively the same.

materially and substantially worse than it otherwise would have been."

Because "materially" and "substantially" are not defined within the Workers' Compensation Act, we refer to their commonly approved usage for guidance in our determination. General Statutes § 1-1 (a); *Police Dept.* v. *State Board of Labor Relations*, 225 Conn. 297, 301 n.6, 622 A.2d 1005 (1993) (" '[w]here a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries' "). A first injury will be considered to have materially[11] and substantially[12] worsened a claimant's permanent disability, if it makes a significant, though not necessarily a primary, contribution to the claimant's disabled condition, such that an absence of the preexisting injury would result in a measurable lessening of the degree of disability, i.e., physical impairment.

Our standard of review of the board's determination is clear. "[T]he [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. Although the [board] may take additional material evidence, this is proper only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and not retry the facts. . . . [T]he power and duty of determining the facts rests on the commissioner, the trier of facts. . . . The conclusions drawn by him from the facts found must

[11] We have previously held that a "material" fact is one "which will make a difference in the result of the case." (Internal quotation marks omitted.) *State* v. *Goggin*, 208 Conn. 606, 619, 546 A.2d 250 (1988). Webster's Third New International Dictionary defines "materially" as meaning "to a significant extent or degree."

[12] We have previously noted that Webster's Third New International Dictionary "defines 'substantially' as meaning 'in a substantial manner' and it defines 'substantial' to mean 'consisting of, relating to, sharing the nature of, or constituting substance; being of moment, important, essential.' " *Clark* v. *Gibbs*, 184 Conn. 410, 417 n.10, 439 A.2d 1060 (1981).

stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them." (Citations omitted; internal quotation marks omitted.) *Six* v. *Thomas O'Connor & Co.*, supra, 235 Conn. 798–99. Therefore, our review is limited to whether there was sufficient evidence in the record from which the commissioner could reasonably have concluded that the claimant's first injury "materially and substantially" contributed to his permanent disability.

In the present case, all the parties relied upon the medical expert testimony of Godar. As previously mentioned, Godar testified that 10 to 20 percent of the claimant's 50 percent loss of respiratory capacity was due to his thirty-five years of smoking. Godar's testimony provided sufficient evidence to support the commissioner's determination that the preexisting lung injury related to the claimant's smoking history was a material and substantial factor in the claimant's permanent physical impairment. Accordingly, we conclude that the board did not abuse its discretion in affirming the commissioner's decision.

The decision of the board is affirmed.

In this opinion the other justices concurred.