EDUCATION ASSOCIATION OF CLINTON *v.* BOARD
OF EDUCATION OF THE TOWN OF CLINTON
(SC 16537)

Borden, Norcott, Katz, Vertefeuille and Zarella, Js.

---

6

Argued September 10, 2001—officially released January 8, 2002

*William J. Dolan*, for the appellant (plaintiff).

*Sheila A. Huddleston*, with whom were *Karen T. Staib* and, on the brief, *Saranne P. Murray*, for the appellee (defendant).

*Opinion*

ZARELLA, J. This appeal requires us to determine the standard under which a review panel, pursuant to the compulsory arbitration provisions of the Teacher Negotiation Act, General Statutes § 10-153a et seq.,[1]

[1] The compulsory arbitration provisions are codified at General Statutes § 10-153f (c), which provides in relevant part: "(1) On the fourth day next following the end of the mediation session or on the one hundred thirty-fifth day prior to the budget submission date, whichever is sooner, the commissioner [of education (commissioner)] shall order the parties to report their settlement of the dispute or, if there is no settlement, to notify the commissioner of either their agreement to submit their dispute to a single arbitrator or the name of the arbitrator selected by each of them. Within five days of providing such notice, the parties shall notify the commissioner of the name of the arbitrator if there is an agreement on a single arbitrator appointed to the panel pursuant to subdivision (3) of subsection (a) of this section or agreement on the third arbitrator appointed to the panel pursuant to said subdivision. . . . If the parties have notified the commissioner of their agreement to submit their dispute to a single arbitrator and they have not agreed on such arbitrator . . . the commissioner shall select such single arbitrator who shall be an impartial representative of the interests of the public in general. If each party has notified the commissioner of the name of the arbitrator it has selected and the parties have not agreed on the third arbitrator . . . the commissioner shall select a third arbitrator, who shall be an impartial representative of the interests of the public in general. If either party fails to notify the commissioner of the name of an arbitrator, the commissioner shall select an arbitrator to serve and the commissioner shall also select a third arbitrator who shall be an impartial representative of the interests of the public in general. Any selection pursuant to this section by the commissioner of an impartial arbitrator shall be made at random from among the members appointed under subdivision (3) of subsection (a) of this section. Arbitrators shall be selected from the panel appointed pursuant to subsection (a) of this section . . . . Whenever a panel of three arbitrators is selected, the chairperson of such panel shall be the impartial representative of the interests of the public in general.

\* \* \*

"(4) After hearing all the issues, the arbitrators or the single arbitrator shall, within twenty days, render a decision in writing, signed by a majority of the arbitrators or the single arbitrator, which states in detail the nature

reviews an arbitration award that the legislative body

of the decision and the disposition of the issues by the arbitrators or the single arbitrator. The written decision shall include a narrative explaining the evaluation by the arbitrators or the single arbitrator of the evidence presented for each item upon which a decision was rendered by the arbitrators or the single arbitrator and shall state with particularity the basis for the decision as to each disputed issue and the manner in which the factors enumerated in this subdivision were considered in arriving at such decision, including, where applicable, the specific similar groups and conditions of employment presented for comparison and accepted by the arbitrators or the single arbitrator and the reason for such acceptance. . . . The decision of the arbitrators or the single arbitrator shall be final and binding upon the parties to the dispute unless a rejection is filed in accordance with subdivision (7) of this subsection. The decision of the arbitrators or the single arbitrator shall incorporate those items of agreement the parties have reached prior to its issuance. . . . In arriving at a decision, the arbitrators or the single arbitrator shall give priority to the public interest and the financial capability of the town or towns in the school district, including consideration of other demands on the financial capability of the town or towns in the school district. In assessing the financial capability of the town or towns, there shall be an irrebuttable presumption that a budget reserve of five per cent or less is not available for payment of the cost of any item subject to arbitration under this chapter. The arbitrators or the single arbitrator shall further consider, in light of such financial capability, the following factors: (A) The negotiations between the parties prior to arbitration, including the offers and the range of discussion of the issues; (B) the interests and welfare of the employee group; (C) changes in the cost of living averaged over the preceding three years; (D) the existing conditions of employment of the employee group and those of similar groups; and (E) the salaries, fringe benefits, and other conditions of employment prevailing in the state labor market, including the terms of recent contract settlements or awards in collective bargaining for other municipal employee organizations and developments in private sector wages and benefits. The parties shall submit to the arbitrators or the single arbitrator their respective positions on each individual issue in dispute between them in the form of a last best offer. The arbitrators or the single arbitrator shall resolve separately each individual disputed issue by accepting the last best offer thereon of either of the parties, and shall incorporate in a decision each such accepted individual last best offer and an explanation of how the total cost of all offers accepted was considered. The award of the arbitrators or the single arbitrator shall not be subject to rejection by referendum. . . .

\* \* \*

"(7) The award of the arbitrators or single arbitrator may be rejected by the legislative body of the local school district or, in the case of a regional school district, by the legislative bodies of the participating towns. Such rejection shall be by a two-thirds majority vote of the members of such

of a local school district has rejected. The plaintiff,

legislative body or, in the case of a regional school district, the legislative body of each participating town, present at a regular or special meeting called and convened for such purpose within twenty-five days of the receipt of the award. If the legislative body or legislative bodies, as appropriate, reject any such award, they shall notify, within ten days after the vote to reject, the commissioner and the exclusive representative for the teachers' or administrators' unit of such vote and submit to them a written explanation of the reasons for the vote. Within ten days after receipt of such notice, the exclusive representative of the teachers' or administrators' unit shall prepare, and the board of education may prepare, a written response to such rejection and shall submit it to such legislative body or legislative bodies, as appropriate, and the commissioner. Within ten days after the commissioner has been notified of the vote to reject, (A) the commissioner shall select a review panel of three arbitrators or, if the parties agree, a single arbitrator, who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award, and (B) such arbitrators or single arbitrator shall review the decision on each rejected issue. The review conducted pursuant to this subdivision shall be limited to the record and briefs of the hearing pursuant to subdivision (2) of this subsection, the written explanation of the reasons for the vote and a written response by either party. In conducting such review, the arbitrators or single arbitrator shall be limited to consideration of the criteria set forth in subdivision (4) of this subsection. . . . The arbitrators or single arbitrator shall accept the last best offer of either of the parties. Within five days after the completion of such review, the arbitrators or single arbitrator shall render a final and binding award with respect to each rejected issue. The decision of the arbitrators or single arbitrator shall be in writing and shall include the specific reasons and standards used by each arbitrator in making his decision on each issue. . . .

"(8) The decision of the arbitrators or a single arbitrator shall be subject to judicial review upon the filing by a party to the arbitration, within thirty days following receipt of a final decision pursuant to subdivision (4) or (7), as appropriate, of a motion to vacate or modify such decision in the superior court for the judicial district wherein the school district involved is located. The superior court, after hearing, may vacate or modify the decision if substantial rights of a party have been prejudiced because such decision is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the panel; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (F) arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ."

Although § 10-153f (c) has been the subject of recent legislative amendments, those amendments are not relevant to the merits of this appeal. For

Education Association of Clinton (association),[2] and the defendant, the Clinton board of education (board), entered into binding arbitration after failing to reach a negotiated settlement on several issues relating to the employment of public school teachers in the town of Clinton. After holding a hearing on the issues, the arbitration panel issued an award that the Clinton board of selectmen[3] (town) subsequently rejected unanimously. Thereafter, pursuant to General Statutes § 10-153f (c) (7) (A),[4] the commissioner of education (commissioner) selected a review panel of three neutral arbitrators, which, after reviewing the record, the town's written explanation of its vote to reject the arbitration panel's award and the parties' written responses, issued a final and binding arbitration award. Subsequently, the association filed with the Superior Court a motion to modify the review panel's award, arguing that, because the review panel had failed to give deference to the decision of the arbitration panel, the award was, inter alia, procedurally unlawful and made in excess of the review panel's statutory authority. The trial court rejected the association's argument, denied the association's motion to modify the award and rendered judgment thereon, from which the association appealed to the Appellate Court. Pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2, we granted the parties' joint request to transfer the appeal to this court. We affirm the judgment of the trial court.

The record discloses the following relevant facts and procedural history. The parties commenced contract negotiations in July, 1998. Notwithstanding the intervention of a mediator on September 17, 1998, the parties

convenience, we refer to the current revision of § 10-153f (c).

[2] The association is the exclusive bargaining representative for certified public school teachers employed by the defendant, the Clinton board of education.

[3] The Clinton board of selectmen is the legislative body of the town of Clinton and the Clinton school district.

[4] See footnote 1 of this opinion.

were unable to reach a negotiated settlement on eleven issues, including whether science laboratory instruction should be considered a teaching period for purposes of calculating daily teaching periods and whether, under limited circumstances, a teacher should be required to perform physical restraint procedures on certain special education students.[5] Pursuant to § 10-153f (c),[6] the parties entered into binding arbitration to resolve those issues, and, on December 3, 1998, the arbitration panel issued its award. The arbitration panel accepted the association's last best offer on six issues, including the issues of science laboratory classification[7]

[5] The issues of science laboratory classification and the use of physical restraint procedures are the only two arbitral issues relevant to this appeal.

[6] Subdivisions (4) and (7) of § 10-153f (c) provide for last best offer interest arbitration. Under the statutory scheme, the parties are required to submit their respective last best offers on each disputed issue to the arbitration panel or single arbitrator. The panel or single arbitrator, in turn, must select from those submitted offers in rendering a decision.

"In last best offer interest arbitration, parties to a dispute submit their proposals as contract language and present evidence of past practice, comparability with surrounding towns, the cost of living, and the employer's ability to pay for proposed wage and benefits improvements. A single arbitrator or a tripartite panel then decides which party's proposal will become part of the contract. The arbitrator's decision is final. Appeal is available only on very narrow grounds. L. Bingham, 'Mid-term Bargaining Disputes and Binding Interest Arbitration for Public Sector Employees,' 17 Conn. L. Rev. 365, 366 n.11 (1985)." (Internal quotation marks omitted.) *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 508 n.3, 522 A.2d 264 (1987).

[7] The association's last best offer, which the arbitration panel accepted, was as follows: "Teaching Periods—The normal schedule for secondary teachers shall be five . . . teaching periods per day, including laboratories.

"In any event, no more than three . . . teachers in any one department may be assigned to six . . . teaching periods per day. When said teachers are assigned to six . . . teaching periods per day they shall be relieved of all other non-teaching duties and shall only be assigned to homeroom duty when all other teachers are assigned to a homeroom duty."

The arbitration panel rejected the board's last best offer, which provided that "[t]he normal schedule for secondary teachers shall be five . . . teaching periods per day.

"In any event, no more than three . . . teachers in any one department may be assigned to six . . . teaching periods per day. When said teachers are assigned to six . . . teaching periods per day they shall be relieved of

and the use of physical restraint procedures,[8] and the board's last best offer on five issues.

On December 28, 1998, the town unanimously voted to reject the arbitration award. In a written explanation of the vote, the town explained that the implementation of the arbitration panel's award regarding the use of physical restraint procedures "would be in direct conflict with the school district's legal obligations" under General Statutes § 10-76d and the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. The town also stated that, with respect to the physical restraint procedure issue, the award was not based on the evidence and was contrary to the statutory factor relating to existing employment conditions of similarly situated employee groups. See General Statutes § 10-153f (c) (4) (D). With respect to the science laboratory classification issue, the town stated that the majority of the arbitration panel did not give priority to the financial implications of the award, as § 10-153f (c) (4) requires, and that, as uncontroverted testimony had demonstrated, the award would require the board to hire additional science teachers at a substantial cost. The town urged the review panel not to give deference to the "arbitration panel's awards on the issues that form[ed] the basis for the [t]own's rejection . . . ."

all other non-teaching duties and shall only be assigned to homeroom duty when all other teachers are assigned to a homeroom duty. When a science [teacher] is assigned to a laboratory, in addition to five . . . teaching periods in a day, said teacher shall be relieved of all other nonteaching duties and shall only be assigned to homeroom duty when all other teachers are assigned to a homeroom duty."

[8] The arbitration panel accepted the association's last best offer on the issue of the use of physical restraint procedures, which provided: "At no time shall any teacher be compelled to provide physical restraint procedures." The arbitration panel rejected the board's position that "[a] teacher who has a special education student with an [individual education plan] providing for physical restraint shall be provided with training in proper techniques for physical restraint. The Superintendent shall convene a committee of teachers and administrators to discuss safety issues related to physical restraint and means of addressing staff concerns regarding such."

In its response to the town's rejection of the arbitration panel's award, the association urged the review panel not to conduct a de novo review. The association suggested that the review panel should review the decisions of the arbitration panel to determine whether there was error or an abuse of discretion. The association contended that the review panel was bound to uphold the initial award if it found evidence in support thereof. The association ultimately contended that the evidence supported modification of the award with respect to only those issues on which the arbitration panel had adopted the board's last best offer.

After reviewing the record and briefs of the parties, the town's written explanation for its rejection of the arbitration panel's award and the parties' respective responses thereto, the review panel issued a final and binding arbitration award. The review panel accepted the last best offer of the association on four issues and the last best offer of the board on seven issues, including the issues of science laboratory classification and the use of physical restraint procedures. With respect to the classification of science laboratory instruction as a teaching period, the review panel concluded that the evidence in the record did not support the arbitration panel's award. The review panel determined that the award was not in the public's best interest. Specifically, the review panel concluded that the financial impact of the award was "unknown and could be substantial," owing in part to the ambiguity of the association's last best offer, which could apply to other teachers who teach nonscience laboratories. The review panel further determined that the board's last best offer adequately had addressed the association's concerns about parity of duties between science teachers and other teachers. With respect to the issue of the use of physical restraint procedures, the review panel concluded that the evidence in the record did not support the arbitration

panel's award. Specifically, the review panel determined, inter alia, that the association's last best offer did not serve the public interest and that the board's offer adequately had addressed the concerns of the association.

The association filed a motion in the trial court seeking to modify the review panel's final arbitration award. The association argued that § 10-153f (c) (7) authorizes the review panel to "conduct a *review* of the [arbitration] panel's decision, not [to] hear the matter *de novo*. Such a review requires the [review] panel to defer to the [arbitration] panel's decision unless it is unsupported by substantial evidence . . . or affected by legal error." (Emphasis in original.) The association also argued that, because the review panel, sitting as an " 'appellate body,' " improperly reviewed the issues de novo, it exceeded its statutory authority, and, thus, its decision with respect to the issues of science laboratory classification and the use of physical restraint procedures was based upon unlawful procedure.[9] In contrast, the board argued that the language of § 10-153f (c) (7) clearly and unambiguously required the review panel to conduct its review de novo, and that the legislative history suggests that the legislature did not intend for the review panel to apply a deferential standard of review.

The trial court rejected the association's argument and concluded that, according to the plain language and the legislative history of § 10-153f (c) (7), "the legislature directed that the review panel take a fresh look at the evidence and analyze it independently against the backdrop of the statutory criteria provided." The trial court further concluded that, "[e]ven if one were to go behind the plain statutory language, the intent of

---

[9] The association further argued that had the review panel applied the proper standard of review, it would have upheld the arbitration panel's decisions regarding the two disputed issues because they were "supported by substantial evidence and not affected by legal error . . . ."

the statute was to return to towns some power in the arbitration process, when a town could muster the super-majority vote. Any interpretation other than a de novo review would undercut the statutory scheme." The trial court thereafter denied the association's motion to modify the arbitration award and rendered judgment thereon. This appeal followed.

I

On appeal to this court, the association argues that the trial court incorrectly determined that the review panel properly reviewed the arbitration panel's award under a de novo standard of review. The statutory language and legislative history of § 10-153f lead us to conclude, as did the trial court, that the review panel properly conducted a de novo review. We, therefore, affirm the judgment of the trial court.

As a preliminary matter, we note that the association's claim raises an issue of statutory construction over which our review is plenary. E.g., *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 403, 780 A.2d 903 (2001). We approach the issue "according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature." (Internal quotation marks omitted.) *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 270, 777 A.2d 645 (2001). "In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)

*Nunno* v. *Wixner*, 257 Conn. 671, 677, 778 A.2d 145 (2001).

## A

As with all issues of statutory construction, we first turn to the relevant statutory language. E.g., *In re Michaela Lee R.*, 253 Conn. 570, 583, 756 A.2d 214 (2000). "Section 10-153f sets forth the mechanics of the mediation and arbitration procedures under the Teacher Negotiation Act."[10] *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 504, 522 A.2d 264 (1987). Section 10-153f (c) (1) mandates binding arbitration of issues that a school board and the representative of the teachers' unit cannot resolve through negotiation or mediation. See *Board of Education* v. *State Board of Labor Relations*, 217 Conn. 110, 118, 584 A.2d 1172 (1991).

---

[10] The Teacher Negotiation Act provides for three interrelated levels of dispute resolution. Under General Statutes § 10-153d (b), the parties initially must negotiate the terms and conditions of employment. General Statutes § 10-153d (b) provides in relevant part that "[t]he local or regional board of education and the organization designated or elected as the exclusive representative for the appropriate unit, through designated officials or their representatives, shall have the duty to negotiate with respect to salaries, hours and other conditions of employment about which either party wishes to negotiate. . . ."

If the parties cannot agree on all disputed issues through negotiation, they ultimately are required to submit the outstanding issues to a mediator pursuant to § 10-153f (b). General Statutes § 10-153f (b) provides in relevant part: "If any local or regional board of education cannot agree with the exclusive representatives of a teachers' or administrators' unit after negotiation concerning the terms and conditions of employment applicable to the employees in such unit, either party may submit the issues to the commissioner for mediation. . . . If . . . the parties have not reached agreement and have failed to initiate mediation, the commissioner shall order the parties to notify the commissioner of the name of a mutually selected mediator and to commence mediation. . . ."

Thereafter, if the parties still cannot resolve the remaining disputed issues, they must enter into binding arbitration pursuant to § 10-153f (c). The issues are submitted to either a single arbitrator or a panel of three arbitrators selected in accordance with § 10-153f (c) (1). See footnote 1 of this opinion.

Additionally, General Statutes § 10-153f (c) (4) provides in relevant part: "After hearing all the issues, the arbitrators or the single arbitrator shall, within twenty days, render a decision in writing, signed by a majority of the arbitrators or the single arbitrator, which states in detail the nature of the decision and the disposition of the issues by the arbitrators or the single arbitrator. The written decision shall include a narrative explaining the evaluation by the arbitrators or the single arbitrator of the evidence presented for each item upon which a decision was rendered by the arbitrators or the single arbitrator and shall state with particularity the basis for the decision as to each disputed issue and the manner in which the factors enumerated in this subdivision were considered in arriving at such decision, including, where applicable, the specific similar groups and conditions of employment presented for comparison and accepted by the arbitrators or the single arbitrator and the reason for such acceptance. . . . The decision of the arbitrators or the single arbitrator shall be final and binding upon the parties to the dispute unless a rejection is filed in accordance with subdivision (7) of this subsection. . . . *In arriving at a decision, the arbitrators or the single arbitrator shall give priority to the public interest and the financial capability of the town or towns in the school district, including consideration of other demands on the financial capability of the town or towns in the school district.* . . . The arbitrators or the single arbitrator shall further consider, *in light of such financial capability*, the following factors: (A) The negotiations between the parties prior to arbitration, including the offers and the range of discussion of the issues; (B) the interests and welfare of the employee group; (C) changes in the cost of living averaged over the preceding three years; (D) the existing conditions of employment of the employee group and those of similar groups; and (E) the salaries,

fringe benefits, and other conditions of employment prevailing in the state labor market, including the terms of recent contract settlements or awards in collective bargaining for other municipal employee organizations and developments in private sector wages and benefits. . . . The arbitrators or the single arbitrator shall resolve separately each individual disputed issue by accepting the last best offer thereon of either of the parties, and shall incorporate in a decision each such accepted individual last best offer and an explanation of how the total cost of all offers accepted was considered. . . ." (Emphasis added.)

Furthermore, pursuant to General Statutes § 10-153f (c) (7), the legislative body of the school district may reject the award of the arbitration panel or the single arbitrator. When the legislative body rejects an award, however, it must provide notice and a written explanation of the reasons for the rejection to the commissioner and the exclusive representative for the teachers' unit. Thereafter, "the exclusive representative of the teachers' . . . unit shall prepare, and the board of education may prepare, a written response to such rejection and shall submit it to such legislative body . . . and the commissioner. Within ten days after the commissioner has been notified of the vote to reject, (A) the commissioner shall select a review panel of three arbitrators or, if the parties agree, a single arbitrator, who are residents of Connecticut and labor relations arbitrators approved by the American Arbitration Association and not members of the panel who issued the rejected award, and (B) such arbitrators or single arbitrator shall review the decision on each rejected issue. [Such] review . . . shall be limited to the record and briefs of the hearing pursuant to subdivision (2) of this subsection, the written explanation of the reasons for the vote and a written response by either party. *In conducting such review, the arbitrators or single arbitrator shall*

*be limited to consideration of the criteria set forth in subdivision (4) of this subsection. . . .* The arbitrators or single arbitrator shall accept the last best offer of either of the parties. Within five days after the completion of such review, the arbitrators or single arbitrator shall render a final and binding award with respect to each rejected issue. The decision of the arbitrators or single arbitrator shall be in writing and shall include the specific reasons and standards used by each arbitrator in making his decision on each issue. . . ." (Emphasis added.) General Statutes § 10-153f (c) (7). Thereafter, any party to the arbitration may move to modify or vacate the final and binding award in the Superior Court pursuant to § 10-153f (c) (8).

The foregoing statutory language demonstrates that the review panel is part and parcel of an integrated arbitration scheme under which only one final and binding arbitration award may result. Pursuant to § 10-153f (c) (7), if the legislative body of the school district rejects the award of the arbitration panel or the single arbitrator by a super majority vote, a second round of proceedings commences. In this scenario, the review panel is charged with the same task as the arbitration panel, namely, evaluating the evidence presented and making an independent determination with respect to the disputed issues in light of the statutory factors, of which consideration of the public interest and the town's financial capability is paramount. Thus, notwithstanding the association's claim that the review panel's authority is limited to a determination whether the arbitration panel's award was based on substantial evidence or affected by legal error,[11] § 10-153f (c) (7) requires

---

[11] The association's claim appears to rest on the untenable assumption that the term "review" precludes any kind of review other than one in which a deferential standard applies. The association neither provides, nor can we find, any legal authority on which to base such a restrictive interpretation. Black's Law Dictionary (6th Ed. 1990) defines "review" as, among other things, "[a] reconsideration; second view or examination; revision; consideration for purposes of correction." This definition is consistent with our

the review panel to take a "second look" at the evidence in light of the same statutory criteria that the arbitration panel or single arbitrator is required to consider. This is the essence of a de novo standard of review. We, therefore, conclude that the trial court properly determined that the review panel was required to conduct a de novo review of the arbitration panel's award.

## B

We further reject the association's claim that the review panel sits as an "appellate body." We find support for our conclusion in the construction of the statute as a whole. *Board of Education* v. *State Board of Labor Relations*, supra, 217 Conn. 116 ("[w]e construe a statute as a whole and read its subsections concurrently in order to reach a reasonable overall interpretation"). We first note the absence of any statutory language that would allow either party before the arbitration panel or the legislative body of the school district to appeal from the decision of the arbitration panel *to the review panel*. Second, the language of subdivisions (7) and (8) of § 10-153f (c), when read together, demonstrates that there is only one appeal as of right under the statute and that appeal may be brought solely in the Superior Court.

Pursuant to § 10-153f (c) (7), the review panel, in rendering a final and binding award, must consider, in addition to the record, the town's reasons for rejecting the award of the arbitration panel or the single arbitrator. General Statutes § 10-153f (c) (7) also requires that "the [review panel] shall be limited to consideration of the criteria set forth in subdivision (4) of this subsection." In contrast, General Statutes § 10-153f (c) (8)

conclusion that the clear language of § 10-153f (c) requires the review panel to issue an award on each rejected issue after independently applying the statutory criteria and conducting a de novo review of the record and the town's reasons for rejecting the award of the arbitration panel or the single arbitrator.

provides that the Superior Court "may vacate or modify" the review panel's final and binding arbitration award. As an appellate body, the Superior Court's authority to vacate or modify the award is limited to six narrow grounds. See General Statutes § 10-153f (c) (8) (A) through (F). Specifically, General Statutes § 10-153f (c) (8) provides in relevant part that "[t]he superior court, after hearing, may vacate or modify the decision if substantial rights of a party have been prejudiced because such decision is: (A) In violation of constitutional or statutory provisions; (B) in excess of the statutory authority of the panel; (C) made upon unlawful procedure; (D) affected by other error of law; (E) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The difference between subdivisions (7) and (8) of § 10-153f (c) buttresses our conclusion that an appellate scope of review applies at the trial court level, but not to the work of the review panel.

C

We also disagree with the association's claim that the role of the review panel is analogous to that of the compensation review board under the Workers' Compensation Act, General Statutes § 31-275 et seq. Although the association correctly notes that, in *Williams* v. *Best Cleaners, Inc.*, 237 Conn. 490, 677 A.2d 1356 (1996), we explained that the compensation review board's "hearing of an appeal from the [compensation] commissioner is not a de novo hearing of the facts"; id., 500; the association does not sufficiently appreciate the distinct schemes that distinguish the Workers' Compensation Act from the Teacher Negotiation Act. As we previously have discussed, the Teacher Negotiation Act provides for a two-tiered arbitration procedure under which the legislative body for the school district, which

is not a direct party to the arbitration, may reject the award of the arbitration panel or the single arbitrator. General Statutes § 10-153f (c) (4) and (7). Such a rejection triggers a review of the award on each rejected issue by a review panel composed of three arbitrators or a single arbitrator whose duty it is to issue a final and binding award in light of the statutory criteria enumerated in § 10-153f (c) (4). Thus, under the Teacher Negotiation Act, the second tier of arbitration automatically commences following the rejection of the award of the arbitration panel or the single arbitrator. By contrast, under the Workers' Compensation Act, a party dissatisfied with the compensation commissioner's award must *"appeal"* from the award to the compensation review board. (Emphasis added.) General Statutes § 31-301 (a).

More importantly, the manner in which a workers' compensation award is issued precludes the conclusion that the review panel's role is the same as that of the compensation review board. At the hearing level, the compensation commissioner must make specific findings of fact in a workers' compensation award. See General Statutes § 31-300 ("after the conclusion of any hearing . . . the commissioner shall send to each party a written copy of his findings and award"). Following an appeal from the compensation commissioner's award to the compensation review board, the compensation review board's decision "shall include its findings, conclusions of law and award." General Statutes § 31-301 (c). We also note that the authority of the compensation review board is limited to "affirming, modifying or reversing the decision of the [compensation] commissioner." General Statutes § 31-301 (c). If any comparison can be drawn, it is the similarity between the role of the compensation review board under the Workers' Compensation Act and the role of the Superior Court under the Teacher Negotiation Act. Compare General

Statutes § 10-153f (c) (8) ("[t]he superior court, after hearing, may vacate or modify the decision") with General Statutes § 31-301 (c) (compensation review board "shall issue its decision, affirming, modifying or reversing the decision of the [compensation] commissioner"); cf. also General Statutes § 31-301b ("[a]ny party aggrieved by the decision of the Compensation Review Board upon any question or questions of law arising in the proceedings may appeal . . . to the Appellate Court").

In contrast, General Statutes § 10-153f (c) (4) requires the arbitration panel or single arbitrator, in rendering a decision, to provide a written statement "explaining the evaluation . . . of the evidence presented for each item upon which a decision was rendered . . . and . . . stat[ing] with particularity the basis for the decision as to each disputed issue and the manner in which the factors enumerated in this subdivision were considered in arriving at such decision . . . ." The review panel's decision also "shall be in writing and shall include the specific reasons and standards used by each arbitrator in making his decision on each issue." General Statutes § 10-153f (c) (7). Therefore, under the Teacher Negotiation Act, neither the arbitration panel nor the review panel—unlike the compensation review board under the Workers' Compensation Act—must provide specific factual findings or conclusions of law in rendering a decision. We, therefore, conclude that the review panel properly conducted a de novo review of the arbitration panel's award.

D

We find support for our conclusion in the statute's legislative history. "In 1965, the legislature adopted the Teacher Negotiation Act . . . ." *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 575, 295 A.2d 526 (1972); Public Acts, Spec. Sess., February,

1965, No. 298 (Spec. Sess. P.A. 298). "The mediation and arbitration procedure provided in § 10-153f applies only when any local or regional board of education 'cannot agree with the exclusive representatives of a teachers' or administrators' unit after negotiation concerning the terms and conditions of employment applicable to the employees in such unit.'" *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 202 Conn. 508, quoting General Statutes (Rev. to 1987) § 10-153f (b). Although § 10-153f initially provided for mediation and nonbinding arbitration; *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 576; see Spec. Sess. P.A. 298, § 5; the statute subsequently was amended to provide for binding arbitration of disputes. Public Acts 1979, No. 79-405, § 1 (P.A. 79-405); see *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 507. By 1979, § 10-153f (c) provided for "last best offer interest arbitration" of contract disputes between local boards of education and representatives of teachers' associations. P.A. 79-405, § 1, codified at General Statutes (Rev. to 1981) § 10-153f (c) (4); see *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 508 ("binding arbitration in lieu of the right to strike"). In 1992, the legislature again amended § 10-153f (c); Public Acts 1992, No. 92-84, §§ 3 and 6 (P.A. 92-84); "in response to apparently widespread perceptions on the part of municipal officials that the binding arbitration process had yielded results that did not sufficiently take into account local financial conditions.[12] A principal purpose of the 1992 amendments was to give a say in the ultimate result of

---

[12] During 1992 public hearings before the joint standing committee on labor and public employees, numerous municipal officials and their representatives lined up to express their displeasure with the binding arbitration system. Alan J. Chapin, then first selectman of the town of Washington, "represent[ed] the consensus of the First Selectmen of the towns of Canaan, Cornwall, Kent, North Canaan, Roxbury, Salisbury, Sharon, Warren and Washington [before the committee]." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1992 Sess., p. 459. Chapin commented that "[t]he financial impact of the Teacher Binding Arbitration

the process to the local officials who were accountable for local finances." *Stratford* v. *State Board of Mediation & Arbitration*, 239 Conn. 32, 49, 681 A.2d 281 (1996); see also id., 49 n.14 (discussing how P.A. 92-84 was designed to address perceived problems under Municipal Employees Relations Act, General Statutes § 7-467 et seq., and Teacher Negotiation Act). As Representative Robert A. Maddox, Jr., stated in a floor debate on the proposed amendment to § 10-153f (c), "this amendment . . . brings back some control to the

awards has been a frequent topic at public meetings for several years . . . . Unfortunately, it has often become a bitter dispute, sometimes alienating voter groups and other municipal employees against our own teachers. Binding arbitration, in our case, has driven a wedge between professionals and the voting majority. . . .

"We clearly recognize the priority of public education, but we are unwilling to accept this outdated legislative mandate affecting a binding settlement for any employee group that even if rejected at the polls by the voters, becomes the final contract. . . .

"We thank the Governor for his proposals, but the measures in [the proposed legislation] will not address the cost concerns of a second arbitration in the northwestern towns, nor the damaged incurred from awards." Id., pp. 459–60.

Michael Dolan, a representative of Francis A. Burke, Jr., then mayor and chairman of the town council of the town of Enfield, expressed similar views before the committee: "Compulsory binding arbitration as it currently stands is a state mandate municipalities cannot afford . . . .

"Capital improvement programs, essential to maintaining a municipal infrastructure, are being reduced or being cut entirely by towns no longer able to fund such programs. [These cuts are] [a]ttributable in part to compulsory binding arbitration and other mandates. Good faith bargaining cannot be accomplished when labor unions have as recourse a method for winning at least some of their issues in the binding arbitration process.

"Binding arbitration is perceived, with good reason, as a no [lose] situation [for] municipal labor unions particularly when economic issues are involved, [notwithstanding] how persuasive a town or city might be relative to its inability to pay. . . .

"The local taxpayers are demanding fairness and accountability, they will find none as long as a third party who is not elected by the people and is not accountable to elected officials is empowered to make decisions with such far reaching fiscal impact. The cost of so called labor peace in the name of binding arbitration has taken its toll." Id., pp. 494–95.

municipalities over the process."[13] 35 H.R. Proc., Pt. 6, 1992 Sess., p. 1902; see also 35 S. Proc., Pt. 7, 1992 Sess., pp. 2313–16, remarks of Senator Robert L. Genuario (acknowledging that concept behind bill was to give some voice in arbitration process to elected officials).

Accordingly, P.A. 92-84, § 3, amended § 10-153f (c) (4) to require the arbitration panel or single arbitrator, in arriving at a decision, to "give priority to the public interest and the financial capability of the town or towns in the school district . . . ." In addition, P.A. 92-84, § 6, amended § 10-153f (c) (7) by authorizing the legislative body of the local or regional school district to reject, by a two-thirds vote, any issue in the decision of the arbitration panel or single arbitrator and by adding the provisions regarding the review panel that are at issue in this appeal. Representative Brian J. Flaherty, a principal supporter of the legislation, summarized the amendments to § 10-153f (c) as follows: "[I]f a [s]tate employee contract goes to binding arbitration, there are provisions for the [s]tate's legislative [b]ody, namely, us, to overturn that award by a two-thirds vote of both [c]hambers. . . .

---

[13] Of those legislators who opposed changes to the binding arbitration system, Representative Ronald L. Smoko keenly identified the impact that the proposed legislation would have on the scheme of last best offer binding arbitration. Smoko stated that certain proposed amendments to § 10-153f (c) eliminate "for all practical purposes . . . the notion of last best offer binding arbitration . . . .

"The system as it exists . . . and that is maintained in the file is one of fairness in my estimation. It's based on mutually accepted levels of fear, fear on both sides of the negotiating table that will push people together. Fear that one side or the other will prevail. That's what pushes people together, the all or nothing provision of last best offer binding arbitration.

"What does this amendment do by the elimination of last best offer binding arbitration? It maintains the fear on the part of the teachers, without question. They have to come to the table with a reasonable offer because there's nothing else that they can offer. But how about the municipal bargaining agent? Where is the element of fear perpetuated to keep the table balanced, to keep this whole process in balance? It's gone. It's gone." 35 H.R. Proc., Pt. 6, 1992 Sess., p. 1919.

"This amendment would give [municipalities] that power by a two-thirds override within [thirty] days after an arbitration award is issued. After that is issued, the legislative body will notify in the case of a teacher award, the [c]ommissioner . . . and one or three arbitrators will be appointed to serve as a review panel.

"Now we had a two-thirds override that was presented to us by the Governor earlier this year, which would have kicked out a whole new arbitration process. The word we got back from many of our towns is that this is too long and it is too costly.

"Our proposal . . . will provide that this panel reviews the first arbitration. . . .

"The [panel] will review the prior arbitration, the rejection and . . . a written reply given from the other party and then [it] will have [twenty] days to make [its] review and [five] after that to issue an award. This award that [it] issue[s] will be final and binding. *This is shorter than blowing it out for a whole new arbitration process.*" (Emphasis added.) 35 H.R. Proc., supra, pp. 1864–65.

Later in the 1992 legislative session, the legislature further amended § 10-153f (c) (7) to specify that, in performing its review of the decision of the arbitration panel or single arbitrator, the review panel shall be "limited to consideration" of the same criteria that the arbitration panel or single arbitrator is required to consider under § 10-153f (c) (4) in rendering a decision. Public Acts 1992, No. 92-170, § 23. As Representative Flaherty explained: "[T]here were some questions as to the standard of review [during the debate on the proposed legislation]. [It] will now, the review panel in conducting the review have to keep it along the lines of the six statutory criteria [enumerated in § 10-153f (c) (4)]." 35 H.R. Proc., Pt. 20, 1992 Sess., pp. 6627–28.

In sum, the legislative history of § 10-153f further demonstrates that the legislature intended that the review panel would conduct a de novo review on the basis of the same criteria that the arbitration panel or single arbitrator must use in arriving at a decision. We, therefore, conclude that the trial court properly rejected the association's claim that the review panel was required to apply a deferential standard of review in reviewing the arbitration panel's decision.

## II

The association also claims that the trial court improperly declined to decide whether the review panel was required to uphold the arbitration panel's award because substantial evidence supported the arbitration panel's decisions with respect to the classification of science laboratory instruction and the use of physical restraint procedures. It is important to note that the association does not argue that the trial court improperly upheld the decision of the review panel because its decision was not based on substantial evidence. Rather, the association argues that there was substantial evidence in the record to support the award of the arbitration panel, the existence of which should have precluded the review panel from deciding as it did. This claim merely restates the dispositive issue on appeal. In light of our conclusion in part I of this opinion, we need not address the merits of this claim.

The judgment is affirmed.

In this opinion the other justices concurred.