### ARMEL WASHINGTON *v.* COMMISSIONER OF CORRECTION
### (SC 18057)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 5—officially released July 15, 2008

*Tejas Bhatt,* assistant public defender, with whom were *Jennifer L. Bourn,* deputy assistant public defender and, on the brief, *Lisa A. Vanderhoof,* former special deputy assistant public defender, for the appellant (petitioner).

*Richard T. Biggar,* assistant attorney general, with whom were *Rita M. Shair,* senior assistant state's attorney and, on the brief, *Richard Blumenthal,* attorney general, *Henri Alexandre,* assistant attorney general, and *John Davenport,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ZARELLA, J. The central issue raised in this appeal is whether the interpretation of General Statutes § 18-98d, first announced in a trilogy of cases in 2004, can be applied retroactively to prisoners in custody as of the date of that decision without offending their constitutional or statutory rights. See *Hunter* v. *Commissioner of Correction,* 271 Conn. 856, 860 A.2d 700 (2004);

*Cox* v. *Commissioner of Correction,* 271 Conn. 844, 860 A.2d 708 (2004); *Harris* v. *Commissioner of Correction,* 271 Conn. 808, 860 A.2d 715 (2004). In *Harris,* we concluded that when a defendant is sentenced for multiple crimes on different days, and the sentences are ordered to be served concurrently, § 18-98d (a) mandates that any presentence confinement credit be applied *only once* regardless of whether the defendant was incarcerated prior to sentencing on a single charge or simultaneously on multiple charges. *Harris* v. *Commissioner of Correction,* supra, 823. On appeal, the petitioner, Armel Washington, claims that the retroactive application of *Harris, Cox* and *Hunter* to recalculate his release date (1) deprived him of his statutory right to receive presentence confinement credit toward his sentences, (2) deprived him of due process of law because the retroactive application of these cases operated as an ex post facto law by improperly enlarging the punishment for his crimes after their commission, and (3) violated the prohibition against double jeopardy because, at the time the respondent, the commissioner of correction, recalculated his sentences, his previously estimated release date on one sentence already had passed. Additionally, the petitioner argues that the trial court delegated its sentencing authority to the respondent in violation of the separation of powers doctrine and that his trial counsel provided ineffective assistance by mistakenly advising the petitioner as to the availability of presentence confinement credit and by failing to secure the application of that credit to the petitioner's second sentence. After consideration of these claims, we find no impropriety and, therefore, affirm the judgment of the habeas court.

The factual backdrop to this appeal, although somewhat complex, is undisputed and aptly described in the habeas court's memorandum of decision. "The petitioner was the defendant in a criminal case ([Docket No.

CR99-0482356-S], hereinafter 'docket 1') in the judicial district of New Haven. The petitioner was arrested and arraigned in [the] docket 1 case on July 23, 1999. The petitioner posted bond that same day and was released.

"The petitioner also was the defendant in a [second] criminal case ([Docket No. CR00-0488977-S], hereinafter 'docket 2') in [geographical area number six in the] judicial district of New Haven. The petitioner was arrested and arraigned in [the] docket 2 [case] on March 9, 2000. The petitioner did not post bond and was held in lieu of bond by the respondent. On March 30, 2000, the petitioner posted bond and was released.

"On April 26, 2000, the petitioner became the defendant in two [additional] criminal cases ([Docket Nos. CR00-0289698-T and CR00-0289699-T] . . . 'dockets 3 and 4,' respectively) in the judicial district of Waterbury. The petitioner did not post bond [in] either [of the] docket 3 or 4 [cases], and was held in lieu of bond by the respondent.

"On May 17, 2000, the petitioner's bonds in both dockets 1 and 2 were raised so that the petitioner was again held in lieu of bond on those two dockets in addition to dockets 3 and 4.

"On June 14, 2001, the petitioner entered . . . guilty pleas in dockets 1 and 2. The [trial] court . . . accepted the pleas after canvassing the petitioner. The agreed upon total effective sentence for dockets 1 and 2 was three years [imprisonment], to run concurrently with the sentences the petitioner then expected to be imposed in dockets 3 and 4. [The trial court] continued the matters for sentencing to allow the petitioner to resolve dockets 3 and 4 in [the] Waterbury cases and [to] be sentenced there first. The petitioner thereafter would return to New Haven for sentencing [in] dockets 1 and 2.

"Dockets 3 and 4 were not resolved as anticipated. Consequently, the petitioner returned to New Haven on October 31, 2001, for sentencing [in] dockets 1 and 2. [The trial court] imposed the total effective sentence previously indicated, namely three years . . . . The total effective sentence was comprised of a one year sentence in docket 1, as well as a three year sentence in docket 2, to run concurrently.

"Upon receiving the mittimi for the docket 1 and 2 sentences, the respondent calculated the presentence confinement credit to be applied to each docket.

"On April 14, 2003, the petitioner was sentenced by the court . . . [in dockets 3 and 4]. In accordance with a plea agreement, the petitioner was sentenced to seven years [imprisonment], of which five years is a mandatory minimum, to run concurrently with sentences then being served [in connection with dockets 1 and 2].[1] The judgment mittimus contain[ed] no order pertaining to presentence confinement credit.

"The time sheet maintained by the respondent for docket 1 shows that, on October 31, 2001, the respondent posted 364 days of presentence confinement credit to the docket 1 sentence. While the petitioner had been held in lieu of bond [in] docket 1 from May 17, 2000, until he was sentenced on October 31, 2001, the one year sentence was less than the time held in lieu of bond. Consequently, the petitioner essentially discharged upon sentencing [in] the docket 1 [case]. The time held in lieu of bond satisfied the petitioner's term of incarceration for that docket. . . .

"The time sheet maintained by the respondent for docket 2 shows that, on October 31, 2001, the respon-

---

[1] We note that the petitioner pleaded guilty in dockets 3 and 4. After accepting the plea agreement that the petitioner had arranged with the state, the court sentenced the petitioner to seven years in each of these two dockets and ordered the sentences to run concurrently.

dent posted 554 days of presentence confinement credit to the docket 2 sentence. The 554 days represent the time periods of March 9, 2000, through March 30, 2000, and May 17, 2000, through October 31, 2001. The application of that credit resulted in a release date from the docket 2 sentence of April 25, 2003. . . .

"The time sheet maintained by the respondent for docket 3 shows that, upon being sentenced on April 14, 2003, the respondent initially did not post any presentence confinement credit to docket 3. A subsequent posting, dated April 24, 2003, shows, however, that the respondent credited 553 days of presentence confinement credit to docket 3. The 553 days represent the time period of April 26, 2000, through October 31, 2001. The application of that credit resulted in a release date from the docket 3 sentence of October 7, 2008. . . .

"The time sheet for docket 2 shows that, on April 24, 2003, the respondent posted a reduction of 532 days of presentence confinement credit. That posting bears the following notation: '5/17/00-10/31/01 MOVED TO SEQ 6 & 7.' As a result of this reduction, the release date from the docket 2 sentence changed from April 25, 2003, to October 8, 2004.[2] . . .

"The time sheets for dockets 2 and 3 show postings dated February 23, 2005, accompanied by the following entry: 'SC 11/04 JC REVIEW.' On November 30, 2004, the Connecticut Supreme Court released a trio of decisions pertaining to the application of presentence confinement credit, namely [*Harris*, *Cox* and *Hunter*]. Thus, the entry 'SC 11/04 JC REVIEW' signifies that the respondent conducted a review of jail credit (i.e., presentence confinement credit) as a result of, and pursuant

---

[2] "A similar reduction of 342 days was posted to the docket 1 sentence on October 31, 2001. . . . The reduction was later rescinded on February 23, 2005, similar to the rescinding of the docket 2 reduction." (Citation omitted.)

to, the November, 2004 Supreme Court decisions in *Harris, Cox* and *Hunter. . . .*

"As a result of the jail credit review performed on dockets 2 and 3, any jail credits moved to docket 3 were removed and again applied to the docket they had first been applied to immediately after sentencing. Consequently, 532 days of presentence confinement credit were moved from docket 3 to docket 2, thereby advancing the release date on docket 2 from October 8, 2004, to April 25, 2003. . . .

"The removal of 532 days of presentence confinement credit from docket 3 altered the release date [of] that sentence from October 7, 2008, to March 23, 2010. The only presentence confinement credit remaining on docket 3 was the credit for twenty-one days for the time period of April 26, 2000, to May 17, 2000. . . .

"The petitioner has been continuously confined, held either in lieu of bond or as a sentenced prisoner, from April 26, 2000, to the present." (Citations omitted.) Additional facts will be set forth as necessary.

The habeas court concluded that the petitioner could not demonstrate any injustice to warrant the issuance of habeas relief and, therefore, rendered judgment denying the habeas petition. Thereafter, the petitioner sought certification to appeal, which the habeas court granted as to all of the petitioner's claims. On the granting of certification, the petitioner appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

We begin by setting forth the appropriate standard of review. "Although a habeas court's findings of fact are reviewed under a clearly erroneous standard of review, questions of law are subject to plenary review. . . . [When] the material facts are not in dispute and the issues before us present questions of law, our review

is plenary." (Citation omitted; internal quotation marks omitted.) *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 817; accord *Cox* v. *Commissioner of Correction*, supra, 271 Conn. 851–52. We additionally note that the issue of whether a criminal defendant has received effective assistance of trial counsel is a mixed question of law and fact; however, such a question also is subject to our plenary review. E.g., *Johnson* v. *Commissioner of Correction*, 285 Conn. 556, 576, 941 A.2d 248 (2008).

In order to address properly the merits of the petitioner's claims, some background as to the relevant statutory scheme and case law pertaining to presentence confinement credit is helpful. Section 18-98d governs the issuance of jail credit to prisoners incarcerated prior to sentencing. Subsection (a) creates a right to credit for days spent in prison prior to sentencing. General Statutes § 18-98d (a) (1) provides in relevant part: "Any person who is confined . . . under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of such person's sentence equal to the number of days which such person spent in such facility from the time such person was placed in presentence confinement to the time such person began serving the term of imprisonment imposed . . . ." The statute, however, expressly limits the credit a prisoner may receive because it provides that "each day of presentence confinement *shall be counted only once* for the purpose of reducing all sentences imposed after such presentence confinement . . . ." (Emphasis added.) General Statutes § 18-98d (a) (1) (A). The statute also excludes from this credit any time that a prisoner spends incarcerated for a prior conviction before sentencing on a separate, pending charge. See General Statutes § 18-98d (a) (1) (B). Finally, subsection (c) of § 18-98d[3] charges the

---

[3] General Statutes § 18-98d (c) provides in relevant part: "The Commissioner of Correction shall be responsible for ensuring that each person . . . receives the correct reduction in such person's sentence . . . ."

respondent with the responsibility for correctly applying presentence confinement credit to a prisoner's sentence.

Section 18-98d provides only part of the relevant statutory guidance in the present case. Because a sentencing court may order sentences to be served concurrently, we also must consider the language of General Statutes § 53a-38 (b). That statute provides in relevant part: "Where a person is under more than one definite sentence, the sentences shall be calculated as follows: (1) If the sentences run concurrently, *the terms merge in* and are satisfied by discharge of the term which has the longest term to run . . . ." (Emphasis added.) General Statutes § 53a-38 (b).

Our case law illustrates the interaction of these statutory provisions, which defines the process by which the respondent calculates a prisoner's anticipated release date. See, e.g., *Hunter* v. *Commissioner of Correction,* supra, 271 Conn. 865–66; *Cox* v. *Commissioner of Correction,* supra, 271 Conn. 853; *Payton* v. *Albert,* 209 Conn. 23, 32, 547 A.2d 1 (1988), overruled in part on other grounds by *Rivera* v. *Commissioner of Correction,* 254 Conn. 214, 756 A.2d 1264 (2000). First, the respondent adds the term of the imposed sentence to the date of sentencing to calculate the latest possible release date; then, the respondent applies presentence confinement credit on that docket to reduce the prisoner's term of confinement by the days that he has been in custody prior to the date of sentencing. Finally, if the prisoner has been ordered to serve multiple sentences concurrently, the respondent then merges the sentences, and the longest sentence controls the prisoner's anticipated release date.

Prior to our decisions in *Harris*, *Cox* and *Hunter*, we had commented once before on the correct application of presentence confinement credit to a prisoner's concurrent sentences. In *Payton* v. *Albert*, supra, 209 Conn. 32, we approved the application of presentence confinement credit, earned simultaneously on multiple charges, to all concurrent sentences imposed on the same day. Although we noted our approval of this practice, it was not the central issue in *Payton*. Rather, *Payton* required us to resolve whether a prisoner may "bank" presentence confinement credit earned in connection with one charge for later application to another, unrelated sentence. (Internal quotation marks omitted.) Id., 33; see id., 29–32. We concluded that such application of presentence confinement credit was not permitted under §§ 18-98d (a) and 53a-38 (b). Id., 29–32. In *Harris*, we distinguished *Payton* from situations in which a prisoner has been ordered to serve concurrent sentences that were imposed on different days. See *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 823. We observed that, "[w]hen concurrent sentences are imposed on the *same* date, as in *Payton*, the available presentence confinement days have not yet been utilized. . . . Conversely, when concurrent sentences are imposed on *different* dates, the presentence confinement days accrued simultaneously on more than one docket are utilized fully on the date that they are applied to the first sentence." (Citation omitted; emphasis added.) Id.

In *Harris*, we announced for the first time our conclusion that § 18-98d (a) prohibits the respondent from crediting multiple sentences, imposed on different days, with the same presentence confinement when a prisoner had been imprisoned simultaneously in multiple dockets. See id. Although our decision in *Cox* was governed by this conclusion, in that case, we further determined that once the respondent has applied

presentence confinement credit to a prisoner's first imposed sentence, the credit has been fully utilized. See *Cox* v. *Commissioner of Correction*, supra, 271 Conn. 852. Thus, we determined that the statute "does not permit" the respondent to transfer presentence confinement credit, after it has been applied to one sentence, to a subsequently imposed sentence to effectuate the earliest possible release date for the prisoner.[4] Id., 853. It is within this context that we now turn to the petitioner's specific claims on appeal.

As a preliminary matter, we note that the petitioner raises both constitutional and statutorily based claims. "Ordinarily, [c]onstitutional issues are not considered unless absolutely necessary to the decision of a case." (Internal quotation marks omitted.) *Bauer* v. *Waste Management of Connecticut, Inc.*, 234 Conn. 221, 230, 662 A.2d 1179 (1995). The present case, however, involves an unusual interaction of claims. Because we conclude that the retroactive application of our decisions in *Harris, Cox* and *Hunter* does not violate due process, our decision in *Cox* controls the outcome of the petitioner's statutory claim. Therefore, we depart from our otherwise well settled manner of approach and address the petitioner's due process claim first.

I

The petitioner first claims that the respondent's retroactive application of the interpretation of § 18-98d that we announced in *Harris*, by virtue of the respondent's recalculation of the petitioner's presentence confine-

---

[4] It is well settled that the determination of a prisoner's release date is not a "static concept" and often requires recalculation by the respondent during the term of a prisoner's sentence. See, e.g., *Tyson* v. *Commissioner of Correction*, 261 Conn. 806, 828, 808 A.2d 653 (2002), cert. denied sub nom. *Tyson* v. *Armstrong*, 538 U.S. 1005, 123 S. Ct. 1914, 155 L. Ed. 2d 836 (2003); see also *Rivera* v. *Commissioner of Correction*, supra, 254 Conn. 240.

ment credit, violates due process.[5] Specifically, the petitioner contends that our judicial construction of § 18-98d, as applied to him, operates as the functional equivalent of an ex post facto law that has lengthened his sentence unconstitutionally.[6] We note that the respondent's brief contains no counterargument to this due process claim. At oral argument before this court, however, the respondent claimed that (1) the petitioner has no liberty interest in presentence confinement credit, or the procedure by which it is credited, that would implicate the due process clause of the fourteenth amendment, (2) this court's interpretation of § 18-98d cannot violate due process by operating as an ex post facto law because § 18-98d is not a penal statute, (3) the court's decisions in *Harris, Cox* and *Hunter* did not enlarge the meaning of § 18-98d but, rather, clarified the meaning of the statute and corrected a misunderstanding on the part of the respondent, and (4) the petitioner's sentence has not been lengthened because, although he may not have received credit in a manner that he would prefer, he has received credit for every day he spent in presentence confinement. We conclude that our decisions in *Harris, Cox* and *Hunter* did not constitute a "change in the law" but, rather, corrected the respondent's misinterpretation of the law. Moreover, we conclude that such correction was foreseeable and does not support an ex post facto claim.[7]

---

[5] We note that the petitioner raised an additional due process claim before the habeas court. He claimed that his due process rights were violated because he was deprived of the benefit of his plea bargain. The habeas court found for the respondent on this claim, and the petitioner has not raised this issue on appeal.

[6] The constitution of the United States, article one, § 10, provides in relevant part: "No State shall . . . pass any . . . ex post facto Law . . . ."

[7] We note that whether § 18-98d is a penal statute for the purposes of ex post facto analysis is an open question in our jurisprudence. Even if we assume, arguendo, that it is a penal statute, for the reasons set forth in the text of this opinion, the petitioner has not demonstrated that his due process rights were violated by retroactive application of our decisions in *Harris, Cox* and *Hunter*.

In response to the petitioner's claim that retroactive application of these decisions had the practical effect of increasing his punishment, the habeas court concluded: "[T]he petitioner's assertion that his term of confinement for docket 3 has somehow been lengthened is incorrect. Additionally, the claim that the respondent is retroactively applying the Supreme Court's construction of a criminal statute in *Cox* in no way takes into consideration the respondent's statutory duty to determine the appropriate amount of presentence confinement [credit] to be applied. . . . This statutory requirement exists for the duration of [the] inmate's total term of confinement." (Citation omitted.)

We begin with the law governing due process violations predicated on the theory that the retroactive application of a court's statutory construction operates like an ex post facto law. "The ex post facto prohibition forbids the Congress and the [s]tates to enact any law which imposes a punishment for an act which was not punishable at the time it was committed . . . or imposes additional punishment to that then prescribed. . . . Through this prohibition, the [f]ramers sought to assure that legislative [a]cts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." (Citations omitted; internal quotation marks omitted.) *Weaver* v. *Graham*, 450 U.S. 24, 28–29, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981). "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id., 29.

The United States Supreme Court has observed, "[a]s the text of the [ex post facto] [c]lause makes clear, it is a limitation upon the powers of the [l]egislature, and does not of its own force apply to the [j]udicial [b]ranch

of government." (Internal quotation marks omitted.) *Rogers* v. *Tennessee*, 532 U.S. 451, 456, 121 S. Ct. 1693, 149 L. Ed. 2d 697 (2001). Nevertheless, "limitations on ex post facto judicial decisionmaking are inherent in the notion of due process." Id. In *Bouie* v. *Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), the United States Supreme Court observed: "If a state legislature is barred by the [e]x [p]ost [f]acto [c]lause from passing such a law, it must follow that a [s]tate Supreme Court is barred by the [d]ue [p]rocess [c]lause from achieving precisely the same result by judicial construction. . . . If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." (Citations omitted; internal quotation marks omitted.) Id., 353–54; see also *State* v. *Hart*, 221 Conn. 595, 612–13 n.15, 605 A.2d 1366 (1992).

It is significant to note that the petitioner in the present case does not argue that our decisions in *Harris*, *Cox* and *Hunter* altered the definition of the crimes with which he was charged or altered the potential sentences prescribed by statute that may be imposed upon conviction of those crimes. Rather, the crux of the petitioner's due process claim is that, as a result of our interpretation of § 18-98d announced in those three decisions, the respondent, the head of an administrative agency, altered the practice of calculating inmates' release dates and that this altered practice was unconstitutionally applied to him. We disagree because the respondent altered the agency's practice to correct its prior misinterpretation of the law. Moreover, we conclude that our decisions in these cases were not unforeseeable or indefensible, and, in reaching this conclusion, we are persuaded by a series of cases that explicitly have rejected similar claims.

We note that a District of Columbia Court of Appeals case, *Davis* v. *Moore*, 772 A.2d 204 (D.C. 2001), is especially useful to our consideration of the petitioner's due process claim. In *Davis*, the court had to determine whether the retroactive application of its decision in *United States Parole Commission* v. *Noble*, 693 A.2d 1084 (D.C. 1997), adopted en banc, 711 A.2d 85 (D.C. 1998), which resulted in the recalculation of inmates' release dates, violated the due process or ex post facto clause. See *Davis* v. *Moore*, supra, 209. In *Noble*, the court resolved a "decade-old" dispute between the District of Columbia department of corrections and the United States Parole Commission over whether a 1987 statute enacted by Congress implicitly repealed a 1932 law prohibiting sentence credit for the time that a convicted prisoner spends on parole when his parole is subsequently revoked. Id., 208; see *United States Parole Commission* v. *Noble*, supra, 1086–87. The court in *Noble* concluded that the prohibition against crediting such "street time" never had been repealed; *Davis* v. *Moore*, supra, 208; and, thus, the District of Columbia department of corrections regulation permitting the granting of credit for street time was based on an "erroneous understanding" of the law. Id.; see *United States Parole Commission* v. *Noble*, supra, 1098–99. Therefore, the court in *Noble* concluded that the regulation was "invalid from its inception because it was directly contrary to the governing statutory language . . . and the [d]epartment's correction of its erroneous interpretation of that law was not the same thing as a change in the law. The corrective action therefore did not run afoul of the ex post facto taboo." *Davis* v. *Moore*, supra, 216; see also *Caballery* v. *United States Parole Commission*, 673 F.2d 43, 47 (2d Cir.) ("[t]he ex post facto clause of the [c]onstitution does not give [a petitioner] a vested right in [an agency's] erroneous interpretation [of a statute]" [internal quotation marks omitted]), cert.

denied, 457 U.S. 1136, 102 S. Ct. 2965, 73 L. Ed. 2d 1354 (1982).[8]

In keeping with its rejection of the petitioners' ex post facto claims, the court in *Davis* also rejected the petitioners' related *Bouie* claims. The petitioners in *Davis* argued that the court's construction of the District of Columbia Good Time Credits Act of 1986 in *Noble* "was so unexpected and contrary to the prevailing view that it would offend due process to apply [the] holding retroactively." *Davis* v. *Moore*, supra, 772 A.2d 216–17. The court noted that there was some validity to this argument because the decision in *Noble* "contradicted expectations in the District [of Columbia] that were encouraged by authoritative pronouncements and that were reasonably held." Id., 217. The court observed that, "[u]nder *Bouie*, however, the due process issue turns not solely on whether *Noble* was unexpected . . . but on whether it was unexpected and indefensible by reference to the law which had been expressed prior

---

[8] In *Caballery* v. *United States Parole Commission*, supra, 673 F.2d 43, the Second Circuit Court of Appeals concluded that there could be no ex post facto violation as a result of a new administrative regulation because it was not a new law. See id., 46. The court observed that the relevant statute had not changed since the petitioner in that case committed the offense for which he had been sentenced and that the new regulation "merely incorporate[d] [a] common law rule . . . ." Id. The court did observe that, "[a]lthough [the regulation] did not constitute a change in the law, it did . . . herald a change in the Parole Commission's practice . . . . This practice was based, however, on the Commission's erroneous interpretation of the [relevant statute]." Id., 47. The court rejected the petitioner's argument that this change in practice constituted an ex post facto violation. See id. "Although much deference is usually accorded an administrative agency's determination, an agency's misinterpretation of a statute is not binding on a court's construction of that statute. . . . [A]n agency misinterpretation of a statute cannot support an ex post facto claim." (Citation omitted.) Id., citing *Mileham* v. *Simmons*, 588 F.2d 1279, 1280 (9th Cir. 1979); see also *Loeffler* v. *Menifee*, 326 F. Sup. 2d 454, 463 (S.D.N.Y. 2004) (no ex post facto violation when agency's reading of statute is corrected and policy changed accordingly "because the [c]onstitution does not give [the] plaintiff a vested right in erroneous interpretations of law").

to the conduct in issue. . . . The question, in short, is *whether [the] decision was so unforeseeable that [the petitioners] had no fair warning that it might come out the way it did."* (Citation omitted; emphasis added; internal quotation marks omitted.) Id.; see also *Aue* v. *Diesslin,* 798 P.2d 436, 441 (Colo. 1990) ("key test in determining whether the due process clause precludes the retrospective application of a judicial decision . . . is whether the decision was sufficiently foreseeable so that the defendant had fair warning that the interpretation given the relevant statute by the court would be applied in his case"). In concluding that the petitioners could not meet this "stringent test"; *Davis* v. *Moore,* supra, 217; the court in *Davis* reasoned: *"Noble* did not overrule a previous decision of this court. . . . Nor did *Noble* employ indefensible or even novel legal reasoning; our decision was grounded on the well established principle of statutory construction that repeals by implication are strongly disfavored. And both the holding and rationale of *Noble* were [predicted by cases that preceded it] . . . ." (Citation omitted.) Id., 218; see also *Stephens* v. *Thomas,* 19 F.3d 498, 500–501 (10th Cir.) (correction of erroneous interpretation foreseeable because language of statute on its face clearly indicates mandatory minimum incarceration prior to parole eligibility), cert. denied, 513 U.S. 1002, 115 S. Ct. 516, 130 L. Ed. 2d 422 (1994); *Glenn* v. *Johnson,* 761 F.2d 192, 194–95 (4th Cir. 1985) (same); *State* v. *Horner,* 153 N.H. 306, 312, 893 A.2d 683 (2006) (when practice "directly contravenes" statutory language, correction not unforeseeable). But cf. *Knuck* v. *Wainwright,* 759 F.2d 856, 858–59 (11th Cir. 1985) (when statute is ambiguous and competing interpretation reasonable to support longstanding agency practice of calculating good time credit, retroactive application of change violates ex post facto clause). We agree with the sound reasoning of the court in *Davis* and conclude that it is consistent

with the holdings and rationales expressed by other courts in rejecting comparable ex post facto type challenges to changes in agency practices that have been premised on erroneous statutory interpretations. See, e.g., *Stephens* v. *Thomas*, supra, 500–501; *Cortinas* v. *United States Parole Commission*, 938 F.2d 43, 46 (5th Cir. 1991); *Glenn* v. *Johnson*, supra, 194–95; *Caballery* v. *United States Parole Commission*, supra, 673 F.2d 47; see also *Leach* v. *Vose*, 689 A.2d 393, 397 (R.I. 1997) (ex post facto clause not implicated when agency changes its procedures to conform to statutory mandates as interpreted by court).

In the present case, the petitioner claims that "[t]he *Harris* trilogy introduced a new judicial interpretation of § 18-98d. This interpretation enlarged the meaning of the statute by incorporating an unwritten requirement that [presentence confinement] credit simultaneously accrued under multiple docket numbers if applied to the first sentence imposed cannot be removed and applied to any subsequent sentence. This interpretation was unforeseeable and indefensible in light of the law expressed prior to the *Harris* trilogy." We disagree.

First, to the extent that the petitioner suggests that *Harris*, *Cox* and *Hunter* represented a change in the law, we do not agree. *Harris* involved a question of first impression for this court. We did not overrule a prior decision but, rather, were called on to construe the meaning of § 18-98d as applied to the petitioner's particular factual circumstances. See *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 822–23 (prior precedent not similar to *Harris* and must be read in context of issue posed in that case). The United States Supreme Court has observed that "[a] judicial construction of a statute is an authoritative statement of what the statute meant *before as well as after* the decision of the case giving rise to that construction." (Emphasis added.) *Rivers* v. *Roadway Express, Inc.*, 511 U.S. 298,

312–13, 114 S. Ct. 1510, 128 L. Ed. 2d 274 (1994). Furthermore, "when [a] court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." Id., 313 n.12. Thus, our construction of § 18-98d in *Harris* stated the meaning of that statute since its enactment and was not a change or alteration of the law. We also note that, in *Harris*, we did not apply any novel legal reasoning or principles of statutory construction. Cf. *Davis* v. *Moore*, supra, 772 A.2d 218. Rather, we based our conclusion on the language of the statute and the legislature's intent in enacting it, both of which comport with our well established approach to statutory interpretation.[9] See *Harris* v. *Commissioner of Correction*, supra, 824–25 (discussing *Delevieleuse* v. *Manson*, 184 Conn. 434, 440–42 n.4, 439 A.2d 1055 [1981], and observing that enactment of § 18-98d "clearly indicate[d] legislative intent . . . to change from a system which awarded multiple credit for [presentence confinement]" [internal quotation marks omitted]).

Second, the petitioner also argues that the respondent's interpretation of the statute should be afforded great deference, especially since its practices were aligned with an opinion provided by the office of the attorney general. In support of this contention, the petitioner relies on our decision in *Sutton* v. *Lopes*, 201

---

[9] We note the "well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of this case . . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citation omitted; internal quotation marks omitted.) *Education Assn. of Clinton* v. *Board of Education*, 259 Conn. 5, 15, 787 A.2d 517 (2002).

Conn. 115, 513 A.2d 139, cert. denied, 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986). The petitioner's reading of *Sutton*, however, is overly broad. In that case, we observed that, although "it is the province of the courts and not the administrative agency to expound and apply the governing principles of law . . . this court has accorded considerable deference to the construction given a statute by the administrative agency charged with its enforcement, particularly when the agency has consistently followed its construction over a long period of time." (Citations omitted.) Id., 120. In *Sutton*, however, we also noted that we viewed the agency's implementation of the statutes at issue "as according with the more logical interpretation of the statutes, presumably the construction contemplated by the legislature." Id., 121. "This court has traditionally eschewed construction of statutory language that leads to absurd results or thwarts its manifest purpose." Id. We note that the respondent's implementation of § 18-98d following *Payton* was not consistent. If it had been, then the claims in *Harris*, *Cox* and *Hunter* never would have arisen. Furthermore, unlike in *Sutton*, we determined in *Harris* that the application of presentence confinement credit that already had been applied to a prior sentence was in direct contravention of the express language of the statute. See *Harris* v. *Commissioner of Correction*, supra, 271 Conn. 820.

Third, the petitioner claims that the *Harris* trilogy was unexpected and indefensible because "prior to the *Harris* trilogy, *Payton* . . . was the acknowledged controlling authority on the calculation of simultaneously accrued [presentence confinement] credit in the context of concurrent sentences." We expressly rejected this broad reading of *Payton* in *Harris*. Id. Prior to *Harris*, we never had addressed the proper application of presentence confinement credit to concurrent sentences imposed on different days. The petitioner asserts

that, despite the distinguishing factual circumstances of *Payton,* "there was no Supreme Court or Appellate Court opinion subsequent to *Payton* that suggested that the application of the *Payton* method was not applicable to concurrent sentences imposed on different days." Contrary to the petitioner's argument, however, our decision in *Harris* resolved a series of conflicting holdings of our Appellate Court with respect to § 18-98d. In *Valle* v. *Commissioner of Correction,* 45 Conn. App. 566, 696 A.2d 1280 (1997), rev'd on other grounds, 244 Conn. 634, 711 A.2d 722 (1998), the Appellate Court concluded that the habeas court correctly had determined that the respondent should apply presentence confinement credit earned simultaneously under multiple dockets to *each* resulting concurrent sentence, even if imposed on different days, to calculate an inmate's anticipated release date. Id., 570–71; see also *Bernstein* v. *Commissioner of Correction,* 83 Conn. App. 77, 84–85, 847 A.2d 1090 (2004). In *Valle,* the respondent argued that the method of applying presentence confinement credit endorsed by the Appellate Court was in contravention of the plain language of § 18-98d because "such a calculation would necessarily result in double counting in direct violation of [the statute]." *Valle* v. *Commissioner of Correction,* supra, 570. The court's interpretation of § 18-98d in *Valle,* however, was not consistent with other Appellate Court cases. In 1999, the Appellate Court affirmed a habeas court's conclusion that a petitioner was not entitled to have days of presentence confinement credited to multiple sentences imposed on separate days, even when he was confined simultaneously on the charges. *Torrice* v. *Commissioner of Correction,* 55 Conn. App. 1, 2, 739 A.2d 270 (1999), aff'g 46 Conn. Sup. 77, 738 A.2d 1164 (1999); see also *King* v. *Commissioner of Correction,* 80 Conn. App. 580, 585–86, 836 A.2d 466 (2003), cert. denied, 267 Conn. 919, 841 A.2d 1191 (2004). In *Torrice* v. *Commis-*

*sioner of Correction,* supra, 46 Conn. Sup. 77, the habeas court concluded that "[t]he presentence time that the petitioner spent . . . was credited by the [respondent] toward the sentence the petitioner received [first] . . . . Therefore . . . this presentence credit *had been fully utilized and was not available* for application to the sentence received [subsequently]. Pretrial confinement credit applied to one sentence in one docket is not thereafter available for application to another sentence in another docket."[10] (Emphasis added.) Id., 82. We accepted this reading of § 18-98d (a) in *Harris*; see *Harris* v. *Commissioner of Correction,* supra, 271 Conn. 823; and it governed our conclusion in *Cox* that the statute "does not permit" the respondent to transfer credits already "fully utilized" on one sentence to a subsequent sentence. *Cox* v. *Commissioner of Correction,* supra, 271 Conn. 853, citing *Harris* v. *Commissioner of Correction,* supra, 820.

Finally, we note that, following the Appellate Court's decision in *Valle,* we granted a petition for certification to appeal in order to resolve the issue of whether "the Appellate Court properly conclude[d] that a prisoner serving multiple concurrent sentences imposed by different courts on different dates is entitled to have presentence confinement credit applied to each of these sentences when that credit represents the same period of presentence confinement . . . ." *Valle* v. *Commis-*

---

[10] The petitioner contends that the Appellate Court's decisions in *King* and *Torrice,* as well as *Mirault* v. *Commissioner of Correction,* 82 Conn. App. 520, 844 A.2d 961 (2004), are distinguishable because the petitioners in those cases had discharged sentences and were serving "dead time" on another charge prior to their claims that the presentence confinement credit should be applied to the subsequent sentence. We are not convinced. The express language of General Statutes § 18-98d (a) (1) (A) provides that "each day of presentence confinement shall be counted *only once* for the purpose of reducing all sentences imposed after such presentence confinement . . . ." (Emphasis added.) Once presentence confinement credit has been applied, it has been fully utilized regardless of whether the petitioner has discharged the sentence prior to the imposition of the subsequent sentence.

*sioner of Correction,* 243 Conn. 909, 701 A.2d 338 (1997). Thus, we conclude that the correct application of § 18-98d to factual situations like the petitioner's was unsettled until our decisions in *Harris, Cox* and *Hunter,* our granting of certification in *Valle* signaled our inclination to review the respondent's practices with respect to the statute, and our resolution of the Appellate Court's inconsistent holdings in *Harris, Cox* and *Hunter* was not unforeseeable. See, e.g., *Davis* v. *Moore,* supra, 772 A.2d 218 (among factors that made decision foreseeable was fact that decision had resolved split of authority among courts).

## II

The petitioner next claims that he was denied his statutory right to presentence confinement credit. He contends that, as a result of the respondent's recalculation of inmates' release dates in the wake of *Harris, Cox* and *Hunter,* "[none] of the petitioner's sentences was reduced by the 532 days [that the] petitioner spent incarcerated in lieu of bond" because "[presentence confinement] credit was not 'utilized' . . . unless it *actually reduced* [the petitioner's] sentence . . . *prior* to the petitioner's discharging that sentence." (Emphasis in original.) The respondent counters that, "in accordance with the holdings of *Harris, Hunter* and *Cox,* [she] never had the authority to transfer the 532 days of presentence [confinement] credit from [the] petitioner's initial three year sentence to his subsequently imposed seven year sentence. The respondent, therefore, had no choice but to correct [the] error." We agree with the respondent and conclude that the petitioner's presentence confinement credit was fully utilized when applied to dockets 1 and 2 upon imposition of those sentences.

We begin by noting our agreement with the habeas court's findings. In its memorandum of decision, the

habeas court relied on our decision in *Cox* and concluded that the "respondent's correction performed February 23, 2005 . . . [was] part of an ongoing statutory duty to correctly calculate and post presentence confinement [credit] . . . [and it] only served to correct a calculation and posting method found errant by *Cox*. The petitioner has not been deprived of any presentence confinement [credit]." (Citation omitted.)

Because we concluded in part I of this opinion that *Harris*, *Cox* and *Hunter* may be applied retroactively to the petitioner, our resolution of this statutory claim is controlled by our decision in *Cox*. In that case, the petitioner had been held in lieu of bond simultaneously under two separate dockets, one in Bridgeport and the other in Milford. *Cox* v. *Commissioner of Correction*, supra, 271 Conn. 846. After sentencing in the Bridgeport case, the respondent applied presentence confinement credit to arrive at a release date of July 29, 2003, for that sentence. Id., 847–48. Approximately two and one-half months later, the petitioner was sentenced in the Milford case, and the court ordered the sentence to run concurrently with the Bridgeport sentence. Id., 848. The respondent applied presentence confinement credit accrued solely in connection with the Milford case to that sentence to arrive at a release date of January 17, 2004. Id. Because the Milford sentence had the longer term, it became the controlling sentence pursuant to § 53a-38 (b). Id., 848–49.

During the petitioner's habeas hearing in *Cox*, a records specialist for the respondent testified that the respondent "did not credit the Milford sentence with the . . . days of presentence confinement that the petitioner had served simultaneously [in the Bridgeport and Milford cases] because to do so would have violated § 18-98d (a) (1) (A) . . . . Consequently, the only days of presentence confinement available to apply to the Milford sentence were the . . . days that the petitioner

had served [in connection with] the Milford [case only] . . . ." Id., 849. According to the record in *Cox*, however, seven months after the initial calculation, the respondent recognized that "it would be to the petitioner's benefit" to transfer the presentence confinement credit from the Bridgeport sentence and apply it to the Milford sentence. As a result of the transfer of credit, the anticipated release date on the Bridgeport sentence was extended to December 17, 2003, and the release date on the Milford sentence was advanced to August 29, 2003. Once the credit was transferred and applied in such a manner, the Bridgeport sentence became the controlling sentence, and the petitioner's overall release date was advanced by one month. Id., 849–50.

The petitioner in *Cox* filed a writ of habeas corpus challenging the respondent's failure to credit both sentences with the presentence confinement credit that had been earned simultaneously in both cases. Id., 850. According to the petitioner's claim, if the credit had been applied to both sentences, his release date would have been advanced by three and one-half months. Id. We disagreed and concluded that "[o]ur interpretation of § 18-98d (a) (1) (A) does not permit the respondent to credit the petitioner's Milford sentence with the . . . days of presentence confinement that he served simultaneously [in] the Milford and Bridgeport [cases] . . . because those days were fully utilized when they were credited to the Bridgeport sentence." Id., 853. Thus, the respondent's transfer of credit was improper. See id. Furthermore, although the August 29, 2003 release date for the Milford sentence that had been calculated in violation of § 18-98d (a) already had passed, thereby arguably discharging the petitioner's Milford sentence; see id.; we ordered the respondent to recalculate the credit in accordance with its original application, thus reinstating the original release date of January 17, 2004. See id., 855.

We conclude in the present case, as we did in *Cox*, that the respondent's calculation of the petitioner's discharge date under dockets 1 and 2 that was performed upon imposition of those sentences was correct and that the petitioner has not been deprived of the benefit of his presentence confinement credit. First, the respondent added to the sentencing date the respective one year term for docket 1 and the three year term for docket 2. Then, in accordance with our decision in *Payton*, because the petitioner was in presentence confinement simultaneously on dockets 1 and 2, and the sentences were imposed on the same day, the respondent credited 364 days of presentence confinement to the docket 1 sentence, effectively discharging it.[11] Next, the petitioner credited 554 days of presentence confinement to the docket 2 sentence, which, at that time, clearly was the controlling sentence. The respondent utilized the petitioner's presentence confinement credit correctly to arrive at an anticipated release date of April 25, 2003.

Prior to the discharge of the sentence in docket 2, the petitioner pleaded guilty in dockets 3 and 4, and received additional seven year sentences in each case to run concurrently with each other and with his existing sentence in docket 2.[12] Because the presentence confinement credit that had accrued simultaneously on all

[11] Although the petitioner had been held in lieu of bond longer than 364 days, we previously have concluded that a petitioner cannot "bank" presentence confinement credit for application to another sentence. See *Payton* v. *Albert*, supra, 209 Conn. 29–32. Thus, with respect to the docket 1 sentence, the petitioner was able to utilize only a portion of his presentence confinement credit.

[12] In the interest of simplicity, we hereinafter refer to the concurrent seven year sentences imposed in dockets 3 and 4 as one seven year sentence. Because those sentences have the same seven year term and were ordered to be served concurrently with each other, the application of presentence confinement credit under § 18-98d would be the same regardless of whether there was one seven year sentence or two concurrent seven year sentences imposed on the same day, as in the present case.

dockets *already had been utilized and applied* to the docket 1 and 2 sentences, the respondent's record reveals that when the seven year sentence in the docket 3 and 4 cases was imposed on April 14, 2003, none of the petitioner's presentence confinement credit was applied to that new sentence.[13] The petitioner was ordered to serve the sentences concurrently, and, therefore, the respondent *merged* the sentences, concluded that the new seven year sentence was the controlling sentence, and calculated the petitioner's anticipated release date as March 23, 2010.

As we previously noted, subsequent to this calculation, the respondent transferred the presentence confinement credit from dockets 1 and 2 and applied it to dockets 3 and 4 to ensure the maximum benefit to the petitioner. In doing so, however, the respondent transferred credit that *already had been utilized* in connection with the petitioner's sentences in dockets 1 and 2 and applied it to the sentence in dockets 3 and 4, thereby incorrectly advancing the petitioner's anticipated release date to October 7, 2008. As we recognized in *Cox*, § 18-98d *does not permit* the respondent to conduct such a recalculation. See *Cox* v. *Commis-*

---

[13] We note that the petitioner argues in his brief that § 18-98d "does not dictate in what order or manner [presentence confinement] credit accrued simultaneously under different dockets must be applied . . . ." We disagree. When a petitioner is sentenced for multiple convictions on different days, upon sentencing for the first conviction, his incarceration ceases to be that of "presentence confinement" within the meaning of § 18-98d because that provision provides that it "shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for such person's presentence confinement . . . ." General Statutes § 18-98d (a) (1) (B). Furthermore, upon sentencing, the petitioner is entitled to have the respondent correctly calculate his sentence, which includes the proper crediting of days spent in presentence confinement. See General Statutes § 18-98d (c). When sentences are imposed on different days, the respondent's responsibility arises upon imposition of the first sentence, and the statute expressly dictates that the credit may be used only once for all sentences. General Statutes § 18-98d (a) (1) (A).

*sioner of Correction,* supra, 271 Conn. 852–53. There-fore, we conclude that the respondent's April 24, 2003 transfer of presentence confinement credit was invalid because it constituted a violation of the statute's prohi-bition against double counting.[14] See, e.g., *Harris* v. *Commissioner of Correction,* supra, 271 Conn. 820. As the respondent's corrected record reflects, the petition-er's official discharge date for the sentences imposed in dockets 1 and 2 was April 24, 2003, and not, as the petitioner insists, October 8, 2004. We view the respondent's actions after April 14, 2003, as akin to a clerical error and conclude that they have not deprived the petitioner of the benefit of his presentence confine-ment credit that properly was applied upon the imposi-tion of the earlier sentences in dockets 1 and 2, in accordance with the dictates of § 18-98d. Cf. *Compton* v. *Lytle,* 134 N.M. 586, 594, 81 P.3d 39 (2003) (comparing adjustment of erroneously granted good time credit to correction of "scrivener's error," and concluding that petitioner clearly was not deprived of due process).[15]

---

[14] The petitioner argues that the respondent cited no authority in support of the assertion that the respondent had a duty to correct the mistake upon learning that the transfer of presentence confinement credit violated § 18-98d. The petitioner fails to recognize, however, that the authority that the respondent cites is the statute itself. The petitioner acknowledges that the language of § 18-98d is "mandatory language," as evidenced by the legisla-ture's use of the word "shall," and that the statute "assures" that presentence confinement credit "will be applied." We agree and further note that the legislature employed the same "mandatory language" in subsection (c) of § 18-98d to mandate that the respondent correctly calculate a prisoner's sentence. See General Statutes § 18-98d (c); see also *Harris* v. *Commis-sioner of Correction,* supra, 271 Conn. 829 (recognizing "mandate" of § 18-98d that respondent calculate inmates' sentences correctly); *Payton* v. *Albert,* supra, 209 Conn. 32 (noting that § 53a-38 [b] "required" respondent to calculate inmate's sentence according to its terms).

[15] The petitioner continuously draws our attention to the fact that, according to the respondent's improper calculation on April 24, 2003, of his anticipated release date, he discharged his sentences imposed in connection with dockets 1 and 2 not on April 25, 2003, but on October 8, 2004. Our decision in *Cox* is instructive. In that case, the petitioner's anticipated dis-charge date of August 29, 2003, resulted from the respondent's miscalculation and improper transfer of credit. See *Cox* v. *Commissioner of Correction,*

We further note that there is no merit to the petitioner's assertion that his presentence confinement credit never was "utilized" because he never "received the benefit" of the credit since the improperly calculated October 8, 2004 discharge date had passed prior to the respondent's correction of the error. We fail to see what "benefit" was denied to him. The petitioner argues that "those 532 days of [presentence confinement] credit have not been applied to *either* of his sentences to *actually* advance his release dates." (Emphasis added.) In the context of multiple concurrent sentences, however, the right to presentence confinement credit is not the right to have a release date actually advanced because § 53a-38 (b) mandates that concurrent sentences be merged with the sentence with the longest term to run *after* the term of the sentence has been determined, i.e., reduced by any applicable presentence confinement credit or presentence good time credit.

In the present case, regardless of the application of the petitioner's presentence confinement credit to the docket 1 and 2 sentences, the longest term to run was the sentence imposed in connection with dockets 3 and 4.[16] Therefore, although the petitioner *believed* that the

supra, 271 Conn. 849–50, 852–53. Even though the petitioner in *Cox* remained incarcerated until the August 29, 2003 discharge date and then was released, we concluded that this discharge date was wrongly estimated and ordered that the respondent correct it, which resulted in the petitioner's having to return to prison to serve out the remainder of the 141 days on his second sentence. See id., 855. We did not permit the petitioner in *Cox* to receive the benefit of the respondent's unlawful application of presentence confinement credit. Likewise, the petitioner in the present case also cannot rely on the respondent's erroneous calculation to insist on an unlawful application of his presentence confinement credit.

[16] The petitioner correctly notes that we previously have observed that "[t]he merger process [dictated by § 53a-38 (b)] does not alter the fact that concurrent sentences remain separate terms of imprisonment which the legislature has permitted to be served at one time." (Internal quotation marks omitted.) *Harris* v. *Commissioner of Correction,* supra, 271 Conn. 819. Nevertheless, the petitioner's attempt to isolate the respondent's erroneous transfer of credit away from his docket 1 and 2 sentences is unavailing. The transfer never would have occurred but for the trial court's decision

docket 1 and 2 sentences did not discharge until October 8, 2004, they actually discharged on April 25, 2003, because the respondent's transfer of presentence confinement credit to the docket 3 and 4 sentence was improper under § 18-98d. We conclude that the petitioner is in no worse a position than when his credit first was applied to his docket 1 and 2 sentences. The record contains the corrected official discharge date, and the petitioner's anticipated release date in 2010 was calculated in accordance with § 18-98d. Contrary to the claim of the petitioner, his sentence has in no manner been increased. See *State* v. *Johnson*, 307 Wis. 2d 735, 746 N.W.2d 581, 587 (App. 2008) ("[The petitioner] implicitly argues that [the court's] interpretation of the sentence credit statute leads to the unreasonable result that his sentence credit 'disappears.' We disagree. [The petitioner] received two concurrent sentences . . . and he received full credit for the [fifty] days against the one sentence that meets the statutory . . . requirement. *The fact that the credit does not reduce [his] overall sentence is a function of the nature of sentencing and sentence credit.*" [Emphasis added.]), review granted, 2008 Wis. LEXIS 185, 186 (April 14, 2008); cf.

---

to order the petitioner to serve his sentences *concurrently*. The fact that the petitioner's sentences were imposed for separate convictions, even though they were to be served concurrently, does not alter our conclusion that the respondent had a duty to calculate the petitioner's sentences correctly and that, in doing so, the respondent did not cause the petitioner to suffer harm because he remained rightfully imprisoned. We draw further support for this conclusion from cases that address prisoners' claimed due process violations resulting from the correction of improperly calculated sentences. These cases recognize that only in extreme cases will the subsequent correction of a miscalculated sentence violate an inmate's due process rights. See, e.g., *DeWitt* v. *Ventetoulo*, 6 F.3d 32, 34–35 (1st Cir. 1993), cert. denied, 511 U.S. 1032, 114 S. Ct. 1542, 128 L. Ed. 2d 193 (1994); *Hanson* v. *State*, 718 A.2d 572, 573–74 (Me. 1998). These cases also recognize the state's compelling interest in correctly calculating prisoners' sentences and the fact that any possible prejudice is "tempered . . . [when a] petitioner [has not been] released from incarceration." *Hanson* v. *State*, supra, 574; see also *State* v. *Lane*, 288 Mont. 286, 302, 957 P.2d 9 (1998).

*Hanson* v. *State*, 718 A.2d 572, 574 (Me. 1998) (reinstatement of petitioner's later discharge date when earlier anticipated date was based on miscalculation of presentence confinement credit in violation of statute did not result in due process violation); *Compton* v. *Lytle*, supra, 134 N.M. 593–94 (no due process violation when state corrected its erroneous application of good time credit, which delayed parole eligibility).

### III

The petitioner next claims that the respondent's application of his presentence confinement credit violates the double jeopardy clause of the federal constitution.[17] The gravamen of the petitioner's complaint in this regard is that "applying jail credit to a concurrent sentence served and discharged serves to lengthen that sentence by the amount of jail credit not timely applied," and, therefore, "the petitioner's [sentences in dockets 1 and 2 were] impermissibly altered after [they were] served." The respondent contends that "none of the petitioner's criminal sentences were lengthened in any manner by the application or deduction of pretrial [confinement credit]. . . . [T]he fact that the respondent complied with a decision of [this] [c]ourt may have

---

[17] We have explained that "[t]he fifth amendment to the United States constitution provides in relevant part: 'No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . .' The *double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment.* . . . 'Although the Connecticut constitution has no specific double jeopardy provision, we have held that the due process guarantees of [the Connecticut constitution] . . . include protection against double jeopardy. . . .

" 'We have recognized that the [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense.' " (Citation omitted.) *State* v. *Colon*, 272 Conn. 106, 293–94, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005).

affected the time spent by [the petitioner] in prison on each docket. Such a fact, however, in no manner means that he was tried twice for any crime, or penalized criminally, in any way." We agree with the respondent.

We begin by noting that the habeas court found this claim to be "entirely without merit" and concluded that "[t]he sentence served in each docket . . . does not exceed the sentence imposed by the [trial] court. None of the petitioner's sentences at issue [has] been modified or altered. Application of presentence confinement credit *does not alter* an imposed sentence. Furthermore, the continuous term of confinement created by the merger of the concurrent terms of confinement results in a total effective term of imprisonment. The petitioner . . . never discharged from the respondent's custody and remains . . . confined as a result of the total effective term of imprisonment. The court fails to discern even a theoretical double jeopardy violation." (Emphasis added.)

We note that, for this claim to be meritorious, it is necessary to accept the petitioner's assertion that he never received presentence confinement credit for the sentences imposed in dockets 1 and 2. Because we concluded in part I of this opinion that the respondent's correction of her earlier misinterpretation of § 18-98d did not violate the petitioner's due process rights and in part II of this opinion that the petitioner did receive the proper presentence confinement credit for the sentences in dockets 1 and 2, he cannot prevail on this claim. The basis of the petitioner's alleged double jeopardy violation is that, by applying presentence confinement credit to an already discharged sentence, the state exacted a greater punishment for his docket 1 and 2 offenses than the trial court imposed. Our foregoing conclusions that presentence confinement credit was applied properly prior to discharge and that the respon-

dent lawfully rectified a subsequent, mistaken transfer of credit necessarily defeats the petitioner's claim.

## IV

The petitioner's next claim is that the trial court violated the separation of powers doctrine because it "abdicated its responsibility and delegated its authority to [the respondent] when it refused to order credit on the basis that [the respondent] must determine the application of [presentence confinement] credit." Specifically, the petitioner contends that the respondent must apply presentence confinement credit "as ordered by the trial court even if the detainee has no constitutional or statutory entitlement to such credit." Conversely, the respondent characterizes the petitioner's claim as suggesting that "the respondent is imposing a criminal sentence in some manner by calculating pretrial [confinement credit] of the petitioner. Such a contention . . . has always been rejected by the courts of this state."[18] We conclude that the trial court properly imposed the petitioner's sentences and properly acknowledged the respondent's administrative duty to adjust the term imposed by the applicable presentence confinement credit.

The following additional facts pertain to resolution of this claim. Before the petitioner entered pleas of guilty in dockets 3 and 4, the petitioner's attorney discussed presentence confinement credit with the trial court at a pretrial conference. Specifically, the petitioner's attorney requested that the court specify in the mittimus that the respondent should give the petitioner "total credit for all the time, everything, all presentence

---

[18] We note, as the petitioner does in his reply brief, that the respondent addressed a different claim than that articulated by the petitioner. The petitioner contends that the trial court unconstitutionally delegated its powers to the respondent whereas the respondent characterizes the claim as being that the respondent usurped the trial court's authority.

incarceration time." According to the petitioner's trial counsel, who testified at the habeas hearing, the judge would not agree "because his feeling was that it's up to the [respondent] to make those determinations." The petitioner's trial counsel testified that, "I think [the judge] might have made a general reference on the bench . . . that jail credits will be left to the [respondent] to calculate." After the trial judge accepted the petitioner's guilty pleas in dockets 3 and 4, and imposed a total effective sentence of seven years, the petitioner asked the trial judge: "I have been locked up for this case since 2000. Does all the time I had in for this count for this?" The trial court replied: "I don't think so. You have to talk to [your counsel]. Whenever you plead guilty to the other charges, you have three years. You probably lost any time you had in at that point. You can talk to [your counsel] about that, and he can check with the [respondent] for you."

In its memorandum of decision, the habeas court rejected the petitioner's separation of powers claim. The habeas court concluded that the trial court "sentenced the petitioner in accordance with [General Statutes] §§ 53a-28 (b) (sentences court shall impose for convictions) and 53a-37 (requirement that court state whether sentence is concurrent or consecutive when there are multiple sentences). The respondent has striven, on the other hand, to comply with the requirements of § 18-98d (c) [by] ensuring the petitioner received the correct reduction of his sentences by applying the appropriate amount of presentence confinement credit to each docket. . . . [C]ontrary to the petitioner's claim . . . such separation of authority is the cornerstone of the separation of powers doctrine."

Article second of the constitution of Connecticut, as amended by article eighteen of the amendments, provides in relevant part: "The powers of government shall be divided into three distinct departments, and

each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another. . . ." We have recognized that "[t]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof." (Internal quotation marks omitted.) *State* v. *McCahill*, 261 Conn. 492, 505, 811 A.2d 667 (2002); accord *Whitaker* v. *Commissioner of Correction*, 90 Conn. App. 460, 480, 878 A.2d 321, cert. denied, 276 Conn. 918, 888 A.2d 89 (2005). "Nevertheless, we are mindful that the branches of government frequently overlap, and . . . the doctrine of the separation of powers cannot be applied rigidly . . . ." (Internal quotation marks omitted.) *Whitaker* v. *Commissioner of Correction*, supra, 481, quoting *In re Samantha C.*, 268 Conn. 614, 639, 847 A.2d 883 (2004); accord *State* v. *Campbell*, 224 Conn. 168, 177, 617 A.2d 889 (1992), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993).

The petitioner's claim is aimed specifically at the powers assigned to the judicial branch and his allegation that the trial court delegated a "strictly judicial function" of sentencing to the executive branch when it deferred to the respondent for the proper calculation and application of the petitioner's presentence confinement credit. The petitioner purports to quote our decision in *State* v. *Clemente*, 166 Conn. 501, 353 A.2d 723 (1974), in asserting that "[i]t is exclusively within the Superior Court's judicial role to impose a sentence."

We note, however, that our review of this decision, other precedent and that of our appellate courts reveals no such observation in *Clemente* or any other case. Significantly, we have made observations that contradict the petitioner's assertion. In *Campbell*, we stated that, "[a]lthough the judiciary unquestionably has power over criminal sentencing . . . the judiciary *does not have exclusive authority in that area.* . . . [T]his court [has] sustained the legislature's creation of mandatory minimum sentences, holding that *sentencing is not within the exclusive control of the judiciary* and that there is no constitutional requirement that courts be given discretion in imposing sentences." (Citation omitted; emphasis added.) *State* v. *Campbell*, supra, 224 Conn. 178.

With respect to our criminal justice system, we have recognized that there are duties and responsibilities that are dedicated to each of our three branches of government. We have acknowledged the legislature's authority to define crimes and the appropriate penalties for them. E.g., *State* v. *Breton*, 212 Conn. 258, 268, 562 A.2d 1060 (1989). We have recognized that the judicial branch is charged with the responsibility of adjudicating criminal charges and ultimately determining the sentence of incarceration, if any, to be imposed. See *State* v. *McCahill*, supra, 261 Conn. 517; *State* v. *Campbell*, supra, 224 Conn. 178. Finally, we have recognized the executive branch's responsibility of managing our correctional institutions, parole system and the administration of prisoners' sentences, including transfers among facilities and the application of sentence credits. See *Holmquist* v. *Manson*, 168 Conn. 389, 393, 362 A.2d 971 (1975) (statutes providing for presentence confinement credit "are mandatory and require . . . administrative action and procedure"); *Glazier* v. *Reed*, 116 Conn. 136, 140, 163 A. 766 (1933) (determination as to whether inmate is entitled to commutation or diminution of sen-

tence is administrative function properly reposed in officers of correctional institutions); see also *State ex rel. Jones* v. *Cooksey,* 830 S.W.2d 421, 425 (Mo. 1992) (statutory scheme governing presentence confinement credit contemplates administrative rather than judicial determination of credit to be awarded); *Mahler* v. *State,* 783 P.2d 973, 973–74 (Okla. Crim. App.) (process of granting credit to inmate's sentence is administrative function of department of corrections), cert. and prohibition denied sub nom. *State ex rel. Henry* v. *Mahler,* 786 P.2d 82 (Okla. 1989). In keeping with this division of responsibilities, we conclude that § 18-98d does not delegate, in any respect, *the power of sentencing* to the respondent. Rather, the statutory scheme properly designates to the executive branch the duty to manage a prisoner's sentence once it has been imposed by, for example, calculating applicable credit to reduce time spent in prison. Cf. *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 396, 512 A.2d 152 (1986) (examination of statutory scheme reveals that statute does not delegate strictly legislative function but, rather, properly delegates specific power over expenditures to executive branch).[19]

---

[19] The petitioner relies on a footnote in *Hammond* v. *Commissioner of Correction,* 259 Conn. 855, 881 n.24, 792 A.2d 774 (2002), for the proposition that the respondent must apply presentence confinement credit, "as ordered by the trial court even if the detainee has no constitutional or statutory entitlement to such credit." The petitioner claims that this supports his position that sentencing is within the exclusive control of the trial court. The petitioner, however, misreads footnote 24 in *Hammond.* In that case, the petitioner sought credit for time spent incarcerated out of state pending his extradition. Id., 856–57. We concluded that § 18-98d, the presentence confinement credit statute, did not grant him a right to credit for time spent incarcerated in another state. Id., 857. We noted in footnote 24 of *Hammond,* however, that, in determining the term of the sentence to impose, even if a defendant has no right to credit for presentence incarceration, it is within the trial court's discretion to consider such incarceration *in its sentencing determination.* See id., 881 n.24. The petitioner suggests that this observation means that, even when a statute does not authorize credit for presentence incarceration, the trial court may, after ordering a sentence, order the respondent to reduce that sentence regardless of the lack of statutory authorization

The petitioner additionally argues that "[t]he trial court . . . imposed a seven year sentence, but because it left the issue of jail credit unanswered, the petitioner is serving not seven years in prison but seven years and 532 days. This is not the sentence the court imposed . . . nor the sentence the petitioner agreed to when he entered into his plea agreement. It is, instead, the sentence the [respondent] determined the petitioner will serve after *Harris, Cox* and *Hunter*." This contention is premised on the erroneous assumption that, pursuant to § 18-98d, the petitioner is entitled to have the 532 days of presentence confinement credit applied to his sentences in such a manner as to *actually advance his release date* from prison. As we previously noted in part II of this opinion, however, § 18-98d does not entitle the petitioner to that treatment but merely confers on him a right to have any days spent in presentence confinement applied once, upon imposition, to reduce the sentences imposed. The petitioner received the 532 days of presentence confinement credit to which he was entitled on his docket 1 and 2 sentences when the trial court imposed those sentences.

V

Because we concluded in part I of this opinion that the retroactive application of *Harris, Cox* and *Hunter* does not violate the petitioner's due process rights, we now address the petitioner's alternative claim that his trial counsel rendered ineffective assistance in failing to foresee our interpretation of § 18-98d announced in

for such reduction. We disagree. Unlike the petitioner in *Hammond*, who received no credit toward his sentence for his preextradition confinement, the petitioner in the present case already had received credit against his sentences in dockets 1 and 2. Our decision, in *Hammond* merely indicates that when a petitioner is not statutorily entitled to receive a reduction in his sentence for presentence incarceration, the court may consider such incarceration, among all other discretionary factors, in determining the appropriate length of the sentence.

those cases and in failing "to ensure the plea and sentence conformed to the petitioner's understanding . . . ." The respondent argues in response that (1) the claim is not reviewable because the petitioner has raised the issue of counsel's failure to foresee our interpretation of § 18-98d in *Harris* for the first time on appeal, (2) even if the claim is reviewable, the petitioner's counsel was effective because he acted reasonably in response to his client's concerns and "his advice accurately reflected the then-existing interpretation of the law," and (3) "[a]n overwhelming collection of case law" rejects claims that a counsel's failure to forecast changes or advances in the law constitutes ineffective assistance. We conclude that the petitioner's claim is properly before us but agree with the habeas court that the petitioner's trial counsel did not render ineffective assistance.

The following additional facts are relevant to resolution of this claim. Prior to the petitioner's agreement to plead guilty in dockets 3 and 4, his counsel was replaced. When Attorney Richard Lafferty began to represent the petitioner, the state initially offered to recommend a sentence of twelve years imprisonment and then ten years. Lafferty was able to renegotiate with the state and secured an offer of seven years imprisonment to be served concurrently with the petitioner's existing sentences. Lafferty was aware of the time that the petitioner had spent in presentence confinement and was aware that the petitioner was concerned about getting credit for that time applied to his sentence in dockets 3 and 4. In response to these concerns, Lafferty contacted an employee of the respondent to inquire about the credit that would be applied to the petitioner's sentence in dockets 3 and 4. The employee with whom Lafferty spoke informed him that the respondent's policy would result in a transfer of the credit from his existing sentences in dockets 1 and 2 to the sentence

in dockets 3 and 4 because the latter sentence had the longest term to run and, therefore, the credits so applied would result in the maximum benefit to the petitioner. Lafferty informed the petitioner of his discussion with the respondent's employee and communicated his understanding that the respondent would apply the petitioner's presentence confinement credit to the seven year sentence imposed in connection with dockets 3 and 4. Additionally, at a pretrial conference, Lafferty requested that the trial court order the transfer of the credit at the petitioner's sentencing hearing. The trial court declined to do so, however, and Lafferty informed the petitioner that the court left the determination of applicable credit to the respondent. Lafferty did not renew his request on the record during the sentencing hearing and did not object to the trial court's denial of his request. As we noted in part IV of this opinion, the petitioner did ask the trial court about his presentence confinement credit and that the court informed him that the respondent would be in charge of calculating any presentence credit to which he would be entitled.

It is well settled that to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *"Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied. . . . It is well settled that [a] reviewing court can find against a petitioner on *either*

ground, whichever is easier." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203 (2008). We also note that, "[u]nder the test in *Hill* [v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)], in which the United States Supreme Court modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Internal quotation marks omitted.) *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 598, 940 A.2d 789 (2008).

With respect to the petitioner's claim of ineffective assistance, we first must address the respondent's claim that it is not properly before this court. Generally, parties are prohibited from raising new issues for the first time on appeal. See, e.g., *Bell Atlantic Mobile, Inc.* v. *Dept. of Public Utility Control*, 253 Conn. 453, 485, 754 A.2d 128 (2000). We agree with the respondent that the petitioner articulates his claim of ineffective assistance differently in his brief before this court than he did in his second amended habeas petition. Our review of the arguments advanced before the habeas court, however, reveals that the substance of the petitioner's claims is essentially the same, and, thus, we are not precluded from reviewing the petitioner's claim on appeal. The petitioner alleged in his second amended habeas petition that Attorney Lafferty "advised him based upon the law as it was understood at the time. If *Harris* is applied retroactively, then counsel's advice was erroneous—counsel failed to apprise [the] petitioner of the true consequences of the plea." The petitioner further alleged that "Attorney Lafferty did not ask the court to order that [the] seven year sentence be credited with

presentence jail credit of 554 days . . . so that his total effective sentence would be seven years from the date of his presentence incarceration." We conclude that the petitioner reiterates these complaints in his brief to this court even though he articulates them a little differently. Therefore, we review the merits of the claim.

In its memorandum of decision, the habeas court rejected the petitioner's claim of ineffective assistance of counsel and concluded that the petitioner had failed to satisfy either the performance prong or the prejudice prong of *Strickland*. With respect to Attorney Lafferty's performance, the court found: "Even though Attorney Lafferty's advice to the petitioner regarding jail credit he would receive now is known to be faulty, at the time he proffered this advice, it was entirely consistent with the respondent's implementation of [§ 18-98d]. The respondent . . . did post the credits [that] Attorney Lafferty advised the petitioner he would receive, in spite of the fact that [the trial court] would not order such credits and the judgment mittimus indicated no court-ordered jail credits.

"Given the foregoing, this court cannot find that Attorney Lafferty's performance was deficient at the time he represented and advised the petitioner. It is clear that [the trial court] had no intention of ordering that the petitioner receive the jail credit. An inquiry or request made by Attorney Lafferty at the sentencing [hearing] would have accomplished nothing more than the petitioner's own inquiry. Furthermore, Attorney Lafferty's advice was consistent with the respondent's implemented policy up until the release of the applicable Supreme Court decisions [of *Harris*, *Cox* and *Hunter*] in late 2004."

With respect to the prejudice prong of *Strickland*, the habeas court found that the petitioner had "completely failed to affirmatively prove the prejudice prong. The

petitioner's potential maximum sentence for [dockets 3 and 4] was forty . . . years, with a potential fine of $10,000. . . . It is quite evident from the colloquy between [the trial court] and the petitioner that the petitioner did not want to proceed to trial. . . . [The] court fails to see how the petitioner has in any way affirmatively shown that there is a reasonable probability that, but for counsel's presumed errors, he would not have pleaded guilty and would have insisted on going to trial." (Citations omitted.)

We first note that the petitioner misstates the prejudice prong of *Strickland* that applies to cases in which a defendant has opted to plead guilty. He claims that there is a reasonable probability that the result of the trial court proceedings would have been different and that he would be serving seven years from the date of being held in presentence confinement. In the context of a guilty plea, however, to succeed on the prejudice prong, the petitioner must demonstrate that, but for counsel's alleged ineffective performance, the petitioner would not have pleaded guilty and would have proceeded to trial. E.g., *Crawford* v. *Commissioner of Correction*, supra, 285 Conn. 598. We agree with the habeas court's observation that the record reveals nothing to suggest that the difference of 532 days of confinement would have rendered the petitioner unwilling to plead guilty to a concurrent seven year sentence when he faced a potential sentence of forty years that could have been ordered to run consecutively to the sentences for which he was incarcerated at the time of the plea. Moreover, we conclude that the petitioner was not prejudiced because there is no evidence in the record to suggest that the petitioner ever was promised that his presentence confinement would be included in the seven year sentence to which he agreed. Because we conclude that the petitioner has failed to demonstrate that he was prejudiced by any allegedly ineffective assis-

tance of counsel, we conclude that he has failed to satisfy *Strickland,* and we need not address his claims under the performance prong. See, e.g., *Johnson* v. *Commissioner of Correction,* supra, 285 Conn. 579 (when petitioner fails to satisfy performance prong, there is no need to evaluate claim under prejudice prong).

The judgment is affirmed.

In this opinion the other justices concurred.